19238

Ex parte G. B. STOKES, Jr., Executor of the Estate of G. B. Stokes, Respondent, in re Redetermination of Tax Deficiency Assessed by SOUTH CAROLINA TAX COMMISSION, Appellant.

(182 S. E. (2d) 306)

*Messrs. Daniel R. McLeod, Atty. Gen., Joe L. Allen, Jr., G. Lewis Argoe, Jr., Asst. Attys. Gen.,* of Columbia, *for Respondent-Appellant,*

*Messrs Wilcox, Hardee, Houck, Palmer & O'Farrell,* of Florence, *for Petitioner-Respondent,*

June 14, 1971.

*Per Curiam.*

This is an appeal from an order of the Court of Common Pleas of Florence County, which, with certain minor deletions, will be reported herewith. We are convinced that such decree properly disposed of all issues in the cause and that the exceptions of the appellant are without merit. The judgment of the lower court is, accordingly,

Affirmed.

The Order of Judge BAKER follows:

This action has been brought by the executor of the estate of G. B. Stokes, deceased, under the provisions of Section 65-525 for a redetermination of the estate tax liability. The estate tax returns lists, as a portion of the assets, a one-half interest in two tracts of realty of approximately thirty (30) acres each. The tracts are located on the north and south side of the Florence-Darlington highway.

The Tax Commission in the course of its investigation found that the record title to the land was in the name of G. B. Stokes. The Commission issued a deficiency for estate taxes in the amount of Four Thousand Three Hundred Ninety-Six and 89/100 ($4,396.89) Dollars based upon the

value of the whole interest rather than the one-half interest as included by the executor.

The petitioner contends that, although the recorded title is in the name of G. B. Stokes, the actual owners were G. B. Stokes and his wife, now widow, as tenants in common, and that title to a one-half interest was acquired by Ora R. Stokes, prior to the death of the deceased and at the times of purchase, through the operative elements of a resulting trust. The position of the Commission is that Mrs. Stokes acquired her interest or title through the death of Mr. Stokes and under the terms of his testament.

Mr. Stokes received the close cooperation and active participation of his wife in the conduction of his business from the beginning of the marriage.

His occupation or business activity was principally that of a merchant, starting with a small store and filling station which grew in size and operation through his industry and management with the material assistance of Mrs. Stokes. The business was conducted in his name but the conclusion is readily reached that as between the two it was considered as a joint activity between and for the benefit of husband and wife but without the formalities of a partnership. In short, Mrs. Stokes was not a paid employee, but was an active associate in the business affairs of the deceased.

In deciding the question whether a trust resulted in favor of Mrs. Stokes "(W)e must bear in mind that here the question arises on the assessment of inheritance taxes and not in a contest between the parties or those claiming under them." *Legendre et al. v. S. C. Tax Commission,* 215 S. C. 514, 56 S. E. (2d) 336.

The petitioner must show in order to create a resulting trust that Mrs. Stokes paid a definite portion of the purchase money at the time of the transactions. As held in *Green v. Green,* 237 S. C. 424, 117 S. E. (2d) 583, quoting from *Surasky v. Weintraub,* 90 S. C. 522, 73

S. E. 1029, "the trust must be coequal with the deed, and cannot arise from any subsequent transactions".

The acquisition of the real estate by Mr. Stokes was through three separate transactions. On October 14, 1936, G. W. Chambless conveyed to G. B. Stokes, for a consideration of Fifteen Hundred ($1,500.00) Dollars, twenty-two and eighty-five one-hundredths (22.85) acres on the north side of the highway. The grantee assumed as a portion of the expressed consideration a mortgage indebtedness of Seven Hundred Ten ($710.00) Dollars. The grantor received a check for Six Hundred Eighty ($680.00) Dollars issued by Mrs. Stokes drawn on her bank account. On March 1, 1937, Eva McCall conveyed to G. B. Stokes eight and seven tenths (8.7) acres, which is the remainder of the tract on the north side of the highway. The expressed consideration is Nine Hundred Twenty-Five ($925.00) Dollars. There is no documentary evidence to show payment of this consideration. Mrs. Stokes testified payment was made from joint funds but she did not recall whether the check was signed by her or by Mr. Stokes. She further stated either had the right to draw upon the account and that the money belonged to both. On June 20, 1944, C. W. Owens conveyed to G. B. Stokes thirty-one and five tenths (31.5) acres on the south side of the highway. The consideration named in the deed is Fifteen Hundred Twenty-Five ($1,525.00) Dollars. There is, as in the McCall transaction, an absence of documentary proof to show that Mrs. Stokes paid any part of the purchase price. Mrs. Stokes testified payment was made from a joint real estate account, which was separate from the store account, but she could not recall whether she signed or Mr. Stokes signed the check.

While it is essential to the creation of a resulting trust that the consideration for the purchase must be paid at or before the time of the original transaction, by the person claiming the benefit of the trust, "events subsequent to the purchase of the property and the transfer

of the title may be considered in determining if a resulting trust was raised where they throw light on the intention with which the purchase was made". 89 C. J. S. Trust, § 120, page 975.

In 1954 a purchase of several houses was made from the Florence-Darlington T. B. Association and these were moved onto the south thirty (30) acres. A check was given to the association for Nine Hundred ($900.00) Dollars, drawn upon an account entitled "B & O Real Estate Co.", and signed by Mr. Stokes. A check was given to L. H. Chitwood in payment for moving the houses drawn upon the same account, signed G. B. Stokes, but Mrs. Stokes testified she signed Mr. Stokes' name to the check. There is also another to Mr. Chitwood, dated March 2, 1954, for Seven Hundred ($700.00) Dollars, drawn upon the real estate account, which carries the signature of Mrs. Stokes.

The name of the B & O Realty Company was derived from the given or Christian name of Mr. Stokes, which is "Beardman", and the given or Christian name of Mrs. Stokes, which is "Ora". The real estate company account was carried in the several banks in Florence. This account was opened as early as 1944, and it was from this account, according to Mrs. Stokes, that payment was made for the thirty (30) acres on the south side of the highway.

Two insurance policies were offered in evidence in which the insured was named as "G. B. & Ora Rogers Stokes." G. B. Stokes, Jr., the executor of the estate, and son of Mr. and Mrs. Stokes, testified that he had checked the tax records starting with 1938 when the first thirty (30) acre tract on the north side of the road was returned and it was returned during the years 1938, 39, 40, 41 and 42 in the name of G. B. Stokes. Thereafter, from 1943 through 1966 it was in the name of Mr. and Mrs. G. B. Stokes. The evidence is clear that the thirty (30) acre tract on the north side of the highway, as well as the tract on the south side, was paid for through the joint funds of Mr. and Mrs.

Stokes. The land on the south side of the highway was returned for 1945 in the name of G. B. Stokes and from 1946 through 1966 in the names of Mr. and Mrs. G. B. Stokes.

It is the contention of the Tax Commission that the petition for a redetermination of the estate tax liability must be denied for the following reasons:

1. The documents and evidence, except for those that relate to the public records of Florence County, are inadmissible;

2. Laches bars the claim;

3. The trust was not established by clear, definite, unequivocal and convincing evidence; and

4. The funds, if any, of Mrs. Stokes that were used to purchase a portion of the land constituted a gift by her to her husband.

The Tax Commission objected to the introduction of cancelled checks and bank books offered by petitioner. These instruments were financial records of Mrs. Stokes and the estate and were acceptable in support of petitioner's claim. The cancelled checks, signed by Mrs. Stokes, those of the B & O Realty Company, and those carrying the name of the deceased, have been considered in this decision, but the bank or deposit books, or slips, have not been given any weight in my conclusion. The principal objection to this evidence is that it was not available to the Commission prior to the hearing on the petition. * * * this point does not have the significance argued by the Commission. Additional assessment was levied against the estate and petitioner has sought a redetermination as provided in Section 65-525 of the Code. The Court has not assumed an administrative duty of fixing the taxable estate, but is passing upon an issue or resulting trust. The taxable estate follows as a result of the decision. * * *

The defense of laches is not available to the Commission. The Commission contends that Mrs. Stokes was negligent

in failing to assert her claim against her husband whereby, quoting from the Commission's brief, "the issue could have been easily settled between the parties". This is predicated upon the assumption that there was an issue between Mr. and Mrs. Stokes. This assumption does not have evidentiary foundation.

The question of ownership was not a factor, nor was there any reason for it to be an issue, in the renunciation of dower by Mrs. Stokes, in 1958, in deed from Mr. Stokes to their son. The lending agency required the dower renunciation since record title was in the name of the father.

The condemnation of land in 1965 or 1966 in which the named condemnee was Mr. Stokes did not present any occasion for a title rift between husband and wife when their marital and business relationship had been happy, peaceful and harmonious for more than thirty-five years. Laches arises upon the failure to assert a known right. The failure to assert does not come into existence until there is a reason or situation that demands assertion. Mrs. Stokes cannot be precluded from claiming an equitable interest when the necessity for its assertion arose by reason of her husband's death. The Commission or tax authority has not been prejudiced thereby since it is only the estate of the taxpayer that is, herein, subject to the appropriate tax.

The Commission asserts that the contribution, if any, by petitioner towards the purchase price of land was intended by her as a gift to her husband, and cites the case of *Legendre v. S. C. Tax Commission,* 215 S. C. 514, 56 S. E. (2d) 336.

The cited case is substantially different from the situation at issue. A gift of One Hundred Thousand ($100,00-.00) Dollars to Mrs. Legendre by her father followed a suggestion by her that he purchase for her a plantation. Mrs. Legendre then bought the plantation and had title made to Mr. and Mrs. Legendre. Her decision to have the conveyance made to her and her husband unmistakably showed

that Mrs. Legendre intended to make a gift of an undivided one-half interest in the plantation to her husband.

The acquisition of the land herein came from joint funds accumulated from joint labors. Mrs. Stokes claims a one-half interest in the land which is in contrast to the claim by Mrs. Legendre of a total interest. The evidence in this case does not indicate or show any gift intention flowing from petitioner to her husband. The legal principle underlying the *Legendre* case is the statement of law contained in Restatement of the law of Trusts, A. L. I., Comment (e) on Section 441: "The fact that the payor takes title to property in the name of himself and another jointly is an indication of an intention of the payor to make a beneficial gift of an undivided interest in the property to the other person; and in the absence of evidence of a different intention of the payor, the other person does not hold his interest upon a resulting trust for the payor. This is true whether the transfer was made to the payor and the other person, as joint tenants or as tenants in common."

The fact that the question arises on the assessment of inheritance taxes and not in a contest between the parties, or those claiming under them, does not change the quantum of proof. When the evidence clearly, definitely and convincingly supports the claim of petitioner the issue must be decided adversely to the respondent.

"No inflexible rule can be laid down in determining the question of gift in cases of this kind. Much depends on the particular facts of each case." *Legendre v. Tax Commission, supra.*

Everything connected with the purchase and ownership of the realty definitely indicates that both parties considered the ownership as joint or tenants in common. The evidence is positive that joint funds were used to purchase the property, improve the property and build thereon. Mrs. Stokes contributed her own monies toward the purchase at the time of the purchase. The tax records

indicate joint ownership for a period of more than twenty years. Insurance policies also clearly show joint ownership.

Petitioner has definitely established a resulting trust and has an undivided interest in both pieces of property. The Tax Commission is therefore directed to redetermine the estate tax liability of the estate of G. B. Stokes on the basis that the Commission is in error in issuing a deficiency for estate taxes in the amount of Four Thousand Three Hundred Ninety-Six and 89/100 ($4,396.89) Dollars resulting from the inclusion of one-half the value of lands which is not a part of the estate.