2268

PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY,
Appellant v. Judy M. DRIVER, Respondent.
(451 S.E. (2d) 924)

Court of Appeals

472

*J. William Ray*, Greenville, *for appellant.*

*Nancy Jo Thomason*, Anderson, *for respondent.*

Heard Nov. 1, 1994.

Decided Dec. 12, 1994.

*Per Curiam:*

This is an insurance subrogation action. The appellant, Provident Life and Accident Insurance Company (Provident), provides group health insurance for the employees of Michelin Tire Corporation. Pursuant to this policy, it paid $28,697.36 in medical bills of the respondent, Judy Driver Lowie (insured), for injuries sustained in a motorcycle accident. The respondent thereafter settled her lawsuit against the driver of the motorcycle, recovering a total of $55,000 from the driver's liability insurance company and her underinsured motorist coverage. In the present action, Provident seeks reimbursement for the medical care payments from the settlement proceeds. Pursuant to an order of reference for final judgment and direct appeal, the master entered

judgment in favor of the respondent on the defenses of waiver, laches, and equitable estoppel. The insurance company appeals all grounds on the sufficiency of the evidence.[1] We reverse and remand.

The respondent was involved in a motorcycle accident on February 15, 1989. When Provident received a claim for medical benefits from the respondent, Provident gave her notice of its subrogation interest which she acknowledged on April 17, 1989. In May 1989, after confirmation that subrogation rights might be involved, Provident retained and forwarded its file to an outside firm, Subro Audit, Inc., a Wisconsin law firm which concentrates on the protection and pursuit of subrogation rights.

Subro immediately mailed letters to the respondent and the tortfeasor's insurance company, dated May 4, 1989, advising of its representation of Provident and Provident's subrogation interest. The letter to the respondent stated that the insurance plan "requires reimbursement of medical expenses paid by [Provident] if [the respondent] recover[s] those expenses from another person or insurance company." The letter also advised the respondent to contact Subro before settlement of any claim or suit, and requested to be informed if she retained an attorney. Although the respondent received this letter, she never advised Subro or Provident that she hired an attorney on May 3, 1989.

Between May and August of 1989, Provident paid medical benefits to the respondent totalling $28,697.36. On January 17, 1990, Subro was notified by the tortfeasor's insurance company that it had settled the claim with the respondent "due to suit by Attorney Glen Thomason." Upon inquiry by Subro two weeks later, the tortfeasor's insurance company refused to disclose the amount of the settlement but disclosed the date of settlement as September 28, 1989. After several unsuccessful attempts in March 1990, Subro reached Attorney Thomason by phone and learned that the total settlement was $55,000, and that Thomason had already disbursed all funds.

Before disbursing the settlement funds to the respondent

---

[1] Provident also appeals the circuit court's denial of its pretrial summary judgment motion. This issue is manifestly without merit. The denial of summary judgment is not appealable, even after a trial on the merits. *See Holloman v. McAllister*, 289 S.C. 183, 345 S.E. (2d) 728 (1986).

on February 28, 1990, the respondent's attorney sent a letter to the Provident Claims Office on January 12, 1990 indicating that the case was "nearing settlement" that would exhaust all liability coverage.[2] Although the letter did not specify the amount of the settlement, it stated that Provident would be responsible for a portion of the respondent's attorney fees, and closed with an offer of $5,256.54 for settling the subrogation claim. After receiving no response to this offer, the respondent's attorney sent a second letter dated February 12, 1990 indicating that the respondent was "asking for her money" and if the insurance company did not respond within 5 days, he would give her the money. On February 27, 1990, the respondent's attorney sent a final letter noting he had received no response to the settlement offer and he was, therefore, closing his file and releasing the money to the respondent.

Subro maintains that it did not respond to the offer because it never received the letters.[3] However, Provident's records custodian acknowledged finding the January 12, 1990 letter in Provident's archives file as she gathered documents for trial, but she did not find the subsequent two letters. After Subro reached the respondent's attorney by phone on March 26, 1990, and was advised that he had disbursed all funds, Subro made no further demands on the respondent until December 16, 1991, when it sent a letter indicating they were still attempting to recover the subrogation interest in the settlement proceeds obtained by the respondent, and they "would like to resolve this without resort to litigation." The respondent's attorney responded on January 6, 1992 that he was no longer in contact with the respondent, and she should be contacted directly.[4] Provident then commenced this suit on September 15, 1992.

Explaining Provident's delay in bringing the lawsuit, its records custodian testified without objection that (1) Provi-

---

[2] The "nearing settlement" statement appears to be false since the evidence indicates the case was settled in September 1989.

[3] The letters from the respondent's attorney were addressed and allegedly mailed to the Provident Claims Office, which no longer had possession of the file.

[4] The respondent's attorney, Glen Thomason, died before the trial of this case.

dent does not rush to sue the tortfeasor because that is the primary right of the insured; and (2) Provident does not sue its insured for subrogation recovery until: (a) the insured recovers from the tortfeasor and the amount of recovery is known, (b) the insured refuses to reimburse Provident, (c) Subro recommends a lawsuit, and (d) the employer (Michelin) gives permission for the suit.

At the conclusion of all evidence, the master rejected Provident's explanation for its delay in bringing suit, and, instead, found as a matter of law that the defenses of waiver, laches and equitable estopped were established *"in that the evidence presented showed that the letters sent by [the respondent's] attorney would have been received by the proper parties, and [Provident] should have, at this point, exercised their right."* (Emphasis added.)

The question for our decision is whether the master erred in applying the doctrines of waiver, equitable estoppel and laches to deny Provident its subrogation interest in the settlement proceeds.

When an insurer pays its insured for a loss resulting from the tortious conduct of a third party, the insurer is subrogated to the rights of its insured against the third party. *Hall & Co. v. Vic Bailey Lincoln-Mercury,* 298 S.C. 282, 379 S.E. (2d) 892 (1989); *Powers v. Calvert Fire Ins. Co.,* 216 S.C. 309, 57 S.E. (2d) 638 (1950).

> Legal subrogation is not dependent upon contract. The doctrine is an equitable one, founded not upon any fixed law, but upon principles of natural justice; its purpose is to require the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it; and it is to be applied according to the dictates of equity and good conscience in the light of the actions and relationship of the parties.

*Calvert Fire Ins. Co. v. James,* 236 S.C. 431, 435, 114 S.E. (2d) 832, 834 (1960) (citations omitted). Thus, on appeal of this equitable action tried by a master, this court has the authority to find facts in accordance with our own view of the evidence. *Townes Associates, Ltd. v. City of Greenville,* 266 S.C. 81, 221 S.E. (2d) 773 (1976); *see also Hall & Co. v. Vic Bailey Lincoln-Mercury,* 298 S.C. 282, 379 S.E. (2d) 892 (1989).

The respondent conceded she did not know of any express waiver or express representation (estoppel) by Provident that it was not going to pursue its subrogation rights, and there is no evidence of such in the record. Thus, any implied waiver or implied estoppel (representation) necessarily depends on the implication arising from provident's failure to respond to the three letters from Attorney Thomason (i.e., its silence).[5]

Under South Carolina law, the essential elements of estoppel are divided between the estopped party and the party claiming estoppel. *Southern Dev. Land and Golf Co. v. South Carolina Pub. Serv. Auth.*, 311 S.C. 29, 426 S.E. (2d) 748 (1993), *aff'g in part and rev'g in part*, 305 S.C. 507, 409 S.E. (2d) 428 (Ct. App. 1991). As to the estopped party, the essential elements are: (1) conduct amounting to a false representation or concealment of material facts, or conduct calculated to convey the impression that the facts are otherwise than, and inconsistent with, the party's subsequent assertions; (2) intention or expectation that such conduct be acted upon by the other party; and (3) actual or constructive knowledge of the real facts. *Id.* As to the party claiming estoppel, the essential elements are: (1) lack of knowledge or the means of acquiring, with reasonable diligence, knowledge of the true facts; (2) reasonable reliance on the other party's conduct; and (3) a prejudicial change in position. *Id.* Unlike waiver, the estopped party need not intend to relinquish or change any existing right for estoppel to arise. *Janasik v. Fairway Oaks Villas*, 307 S.C. 339, 415 S.E. (2d) 384 (1992). The reliance by the party claiming estoppel must be reasonable, and it must proceed in good faith. *Southern Dev., supra; Masonic Temple, Inc. v. Ebert*, 199 S.C. 5, 18 S.E. (2d) 584 (1942).

Estoppel by silence arises when the estopped party owes a duty to speak to the other party but refrains from doing so, thereby leading the other party to believe in an erroneous state of facts. *Southern Dev.*, 426 S.E. (2d) at 751. A "manifest intent" to mislead is not required for estoppel by silence; it arises when the silence is intended or has the effect of misleading the other party, provided the

---

[5] As noted above, the master based his findings of waiver and estoppel on Provident's failure to respond to the letters.

other party acts reasonably. *Id.* Estoppel may also arise when the estopped party fails to act at the "first proper and opportune moment." *Metromont Materials Corp. v. Pennell,* 270 S.C. 9, 239 S.E. (2d) 753 (1977).

Waiver is the voluntary and intentional relinquishment of a known right. *Janasik,* 307 S.C. at 344, 415 S.E. (2d) at 387. It may be implied from circumstances indicating an intent to waive. *Bonnette v. State,* 277 S.C. 17, 282 S.E. (2d) 597 (1981); *Lyles v. BMI, Inc.,* 292 S.C. 153, 355 S.E. (2d) 282 (Ct. App. 1987). Acts that are inconsistent with the continued assertion of a right may also give rise to a waiver. *Bonnette,* 282 S.E. (2d) 597. Waiver, like estoppel, is an affirmative defense and the burden of proof is upon the party who asserts it. *Frady v. Smith,* 247 S.C. 353, 147 S.E. (2d) 412 (1966).

In this case, the respondent failed to meet this burden, and the master's findings of estoppel and waiver are without evidentiary support. In fact, the record is utterly devoid of any evidence demonstrating that Provident, through conduct or silence, concealed material facts or made any misrepresentation causing the respondent to alter her position to her prejudice. Moreover, the evidence before the court showed some persistence on the part of Provident, and then Subro, to keep the respondent informed, to acquire information and to remind her of her obligations and their subrogation interest. Under these circumstances, we find no waiver or estoppel.

The respondent argues that if waiver and estoppel were not adequately established, laches should apply in this case to prevent Provident from recovering. Laches is the negligent failure to act for an unreasonable period of time. *Gibbs v. Kimbrell,* 311 S.C. 261, 428 S.E. (2d) 725 (Ct. App. 1993). Under the doctrine of laches, if the party, knowing his rights, does not seasonably assert them, but by unreasonable delay sufferers his adversary to incur expenses or otherwise detrimentally change his position, then equity will ordinarily refuse to enforce these rights. *Id.* 428 S.E. (2d) at 730. Delay alone in the assertion of a right does not constitute laches. *Id.* The party asserting laches must also satisfactorily show negligence, the opportunity to have acted sooner, and material prejudice before the bar in equity is complete. *Wallace v. Timmons,* 232 S.C. 311, 101 S.E. (2d) 844 (1958);

*Bell v. Mackey*, 191 S.C. 105, 3 S.E. (2d) 816 (1939). As with waiver, laches arises upon the failure to assert a known right under circumstances indicating that the lached party has abandoned or surrendered the right. *See Ex parte Stokes*, 256 S.C. 260, 182 S.E. (2d) 306 (1971); *Byars v. Cherokee County*, 237 S.C. 548, 118 S.E. (2d) 324 (1961). The lached party must have had actual knowledge or inquiry notice of the facts forming the basis of its claim, and its failure to assert its right is irrelevant until there is a reason or situation that demands assertion. *Ex parte Stokes*, 256 S.C. 260, 182 S.E. (2d) 306; *Mackey*, 191 S.C. 105, 3 S.E. (2d) 816. The burden of proof is upon the person claiming laches. *Id.*

In our view, the respondent failed to establish the elements of laches. First, Provident's failure to respond to the respondent's settlement offer within a two-month period does not constitute a negligent failure to act in light of the respondent's four-month delay in revealing the settlement and eight-month delay in identifying her representative. He who seeks equity must do equity. *Taff v. Smith*, 114 S.C. 306, 103 S.E., 551 (1920). Moreover, as noted in *Gibbs*, "a party who openly defies known rights, in the absence of anything to mislead him . . . is not in a position to urge as a bar [his adversary's] failure to take the most instant conceivable resort to the courts." Here, the respondent maintained control and possession of funds which she acknowledged Provident had an interest in, and instead of complying with her obligation to reimburse Provident, she, within a two-month period, decided to demand money she knew was owed to Provident. She should not be allowed to benefit from the two-month delay of Provident by utilizing laches as a defense to payment of a legal obligation.

Second, prejudice is an essential element of laches. In order to constitute laches, the delay in bringing suit must have caused some injury, prejudice or disadvantage to the party claiming laches. *Gibbs, supra.* It is reversible error to apply laches and bar relief to the plaintiff where the defendant has enjoyed a benefit and not suffered a detrimental change of position attributable to the delay. *Mack v. Edens*, 306 S.C. 433, 412 S.E. (2d) 431 (Ct. App. 1991). Here, the respondent, instead of being harmed or injured, received a profitable double recovery of medical care expenses. Further-

more, the respondent, by her own admission during cross-examination, has not been damaged or harmed by Provident. She simply claims she spent some of the extra money on medical bills Provident had no obligation to pay.

Since Provident was not guilty of unreasonable delay in asserting its rights and the respondent did not suffer any detrimental change of position attributable to Provident, the master erred in applying the doctrine of laches to bar relief to Provident.

During oral argument, Provident contended it should not be responsible for any attorney fees associated with the settlement of the third-party action because it incurred additional attorney fees in maintaining this action to enforce subrogation due to the respondent's unjust refusal to reimburse it as required by their agreement. ordinarily, where the insured prosecutes the suit against the tortfeasor, thereby incurring legal expenses and court costs, the insured is generally entitled to recover such expenses prior to any portion of the recovery being paid to the insurer, or the insurer must at least pay its proportionate share of the expenses. *See* 16 Couch on Insurance 2d *Subrogation* § 61.47 (1983). However, as further noted in Couch:

> If the insured, after having his loss paid by insurance companies under policies which gave the insurers the right to be subrogated, with the purpose and intent of defrauding the insurance companies, recovers judgment against the wrongdoer in an action of which the insurers have no knowledge, which judgment is fraudulently assigned, the insurers are entitled to be reimbursed, out of the judgment recovered, the amounts which they paid out under the policies, without being compelled to contribute to the payment of the expenses incurred for services rendered in recovering the judgment.

16 Couch on Insurance 2d *Subrogation* § 61.47 (1983). Therefore, we reverse the judgment for the respondent and remand this case for a determination of the proportionate share of litigation expenses, if any, Provident is required to pay.

Reversed and remanded.