24485

MID-STATE TRUST, II, Appellant v. Glenda Q. WRIGHT, Treasurer and
Tax Collector of McCormick County, David B. Endredi, Lost Wilderness,
Inc., Edward L. Scott and Dorothy L. McCoy, Respondents.

(474 S.E. (2d) 421)

Supreme Court

---

*Ray L. Derrick* and *Gary P. Rish,* Irmo, *for Appellant.*

*G.P. Callison, Jr.,* of *Callison, Dorn, Thomason & Knott,* Greenwood, *for Respondent Wright; O. Lee Sturkey,* McCormick, *for Respondent Endredi.*

Heard May 8, 1996.

Decided Aug. 19, 1996.

TOAL, Justice:

Appellant Mid-State Trust II ("Mid-State") brought this action to set aside a tax sale of some real property in McCormick County. In the alternative, Mid-State sought to remove a dwelling from the property sold at the tax sale. The Special Referee denied Mid-State any relief, finding Mid-State lacks standing to challenge the tax sale and is barred by laches from seeking removal of the dwelling. We reverse.

## FACTUAL/PROCEDURAL BACKGROUND

Edward L. Scott ("Owner") owned Lot 243-A of the Lost Wilderness Subdivision of McCormick County. Lost Wilderness, Inc. owned the adjacent lot, Lot 243.

Owner wanted to build a home on his lot, so he contracted with Jim Walter Homes, Inc. for the construction of a "shell" home on his lot. To finance the construction, Owner signed over to Jim Walter Homes a note and mortgage, which mortgage was to be secured by Lot 243-A and any improvements built on that lot. Jim Walter Homes had Owner put stakes where he wanted the shell home built. The home accidentally was built on Lot 243, owned by Lost Wilderness, Inc., rather than on Lot 243-A, which belonged to Owner. No one knew of this error. The note and mortgage eventually were assigned to Mid-State as mortgagee.

Some years later both Owner and Lost Wilderness were delinquent in paying their property taxes for Lots 243-A and 243, respectively. In December 1991, the county sold both properties at a tax sale to Respondent David Endredi ("Purchaser").

As mortgagee of Lot 243-A, Mid-State had the right to redeem the property within one year of the tax sale by paying the taxes owed plus various costs. Mid-State exercised its right of redemption as to Lot 243-A and received the deed for that property. Importantly, the tax assessment for Lot 243-A included taxed for the dwelling that was supposed to be on Lot 243-A, but that actually was on Lot 243. Mid-State received no notice of a right to redemption on Lot 243, in which Mid-State had no record interest. The redemption period for Lot 243 expired.

When Mid-State learned the dwelling for which it had paid taxes was located on Lot 243, it first negotiated with Purchaser for the removal of the dwelling from Lot 243. When that proved unsuccessful, Mid-State filed this action against Glenda Wright, the Treasurer and Tax Collector for McCormick County, and against Purchaser. Mid-State sought a set aside of the tax sale or, in the alternative, the right to remove the shell home from Lot 243 to Lot 243-A. The Special Referee denied relief on both counts.

Mid-State appeals.

## LAW/ANALYSIS

Mid-State conceded at oral argument that the ultimate relief it seeks is removal of the dwelling from Lot 243 to Lot 243-A, where the dwelling was intended to be. Either a set aside of the tax sale or an order granting Mid-State the right to remove the dwelling from Lot 243 will achieve the result Mid-State seeks. If the tax sale is set aside, Mid-State can negotiate with Lost Wilderness, Inc., the record owner of Lot 243, for removal of the dwelling. Conversely, if the tax sale is not set aside but Mid-State is granted relief against Purchaser, Mid-State will be able to remove the dwelling. Although we believe the Special Referee erred in holding Mid-State lacks standing to challenge the tax sale, we also believe Mid-State is entitled to remove the shell home from Lot 243 even absent a set aside of the tax sale. Therefore, we do not further address Mid-State's challenge of the tax sale itself. Instead, we reach only the second issue, Mid-State's right to remove the dwelling from Lot 243 to Lot 243-A.

Mid-State argues the Special Referee erred in refusing to order the removal of the shell home from Lot 243.

The basis for the Special Referee's ruling was the lack of any unjust enrichment to Purchaser Endredi, as well as laches on the part of Mid-State.

### A. UNJUST ENRICHMENT

In *C&S National Bank v. Modern Homes Construction Co.*, 248 S.C. 130, 149 S.E. (2d) 326 (1966), this Court found that one who makes improvements to land with a good-faith belief the land is his own is entitled to relief in equity. The Court reasoned that the actual landowner would be unjustly enriched by the improvements mistakenly built on his land, absent some form of equitable relief to the person who, believing the land was his own, constructed the improvements. At first blush, *Modern Homes* appears directly on point with the present case.[1]

---

[1] Mid-State did not actually construct the improvements, but is the mortgagee of the person who did. Nevertheless, we find the reasoning of *Modern Homes* applicable to the present situation.

However, the Special Referee distinguished *Modern Homes* by observing there is no unjust enrichment here. We believe this was error. In an action in equity, this Court may take its own view of the evidence and make its own findings of fact. *E.g., Doe v. Clark,* — S.C. —, 457 S.E. (2d) 336 (1995). At trial, Bill Farthing, a field representative for Mid-State Homes, testified that the purchase price for the shell home (including construction costs) was $15,805. Furthermore, some testimony indicated that at the tax sales, Lot 243-A sold for $1000 more than Lot 243, probably because the shell home was thought to be located on Lot 243-A. In our view, this evidence clearly shows the shell home had some value, however minimal by commercial standards, and that Purchaser was unjustly enriched by the presence of the shell home on Lot 243.

## B. LACHES

The Special Referee also found the doctrine of laches bars Mid-State from asserting a right to remove the shell home from Lot 243. We hold the Special Referee's ruling on laches was erroneous.

Laches is the neglect for an unreasonable and unexplained amount of time, under circumstances permitting diligence, to do what in law should have been done. *Jefferson Pilot Life Ins. Co. v. Gum,* 302 S.C. 8, 393 S.E. (2d) 180 (1990). Importantly, delay in the assertion of a right does not, in and of itself, constitute laches; rather, "[s]o long as there is no knowledge of the wrong committed and no refusal to embrace opportunity to ascertain facts, there can be no laches." *Archambault v. Sprouse,* 218 S.C. 500, 63 S.E. (2d) 459 (1951). The failure to assert a right "does not come into existence until there is a reason or situation that demands assertion." *Ex parte Stokes,* 256 S.C. 260, 182 S.E. (2d) 306 (1971). Moreover, the party asserting laches must show it has been materially prejudiced by the other party's delay. *Eg., Chambers of S.C., Inc. v. County Council,* 315 S.C. 418, 434 S.E. (2d) 279 (1993). Finally, whether laches applies in a particular situation is highly fact-specific, so each case must be judged on its own merits. *Gum,* 302 S.C. 8, 393 S.E. (2d) 180.

Here, Purchaser clearly has been at least slightly prejudiced by Mid-State's failure to assert its claim sooner: He

made expenditures and began improvements on the shell home before he had any notice of Mid-State's claim to and interest in the home.[2] The mere fact of prejudice, however, is not dispositive. Mid-State must have had knowledge or notice of its claim to the home.

Neither Mid-State nor any of its predecessors had actual knowledge of the improper placement of the house; that fact was discovered only in 1993, when Mid-State attempted to foreclose on its mortgage on Lot 243-A. Furthermore, Mid-State had no reason to know the house was improperly placed. As Mid-State points out, the tax records would have been of no help in discovering the mistake, because those records reflected the shell home being on Lot 243-A. If anything, the tax records, including the assessment for Lot 243-A, confirmed what Mid-State had every reason to think—that the shell home was located on Lot 243-A, where it was supposed to have been built. But see Arceneaux v. Arrington, 284 S.C. 500, 327 S.E. (2d) 357 (Ct. App. 1985) (finding laches barred plaintiffs' claim where known facts put plaintiffs on inquiry notice and means for ascertaining truth were readily available).

Jim Walters Homes, Mid-State's predecessor, likely should have known it was construction the shell home on the wrong lot. However, in virtually every case in which a dwelling or other improvement is built on the wrong property, there will have been negligence by the original builder or owner. After the fact of original negligence, the mistake is not easily discovered absent an actual controversy, unless the county's tax and property records are correct.

Here, Mid-State did not sit on its rights when an actual controversy arose. As soon as it learned the shell home was on the wrong lot, it attempted to negotiate with Purchaser for the removal of the home. When that failed, it filed suit against both Purchaser and the Treasurer and Tax Collector for McCormick County. Moreover, no situation arose in which Owner or Mid-State needed to assert any claim to the shell home. Lost Wilderness, Inc., the record owner of Lot 243, apparently never contested Owner's interest in the shell home. See Stokes, 256 S.C. 260, 182 S.E. (2d) 306 (rejecting Tax Commission's position widow should have asserted, during husband's

---

[2] In equity, Purchaser's prejudice can also be addressed.

lifetime, her interest in property titled to husband; where marital and business relationships between husband and wife were happy and productive, there was no occasion to assert property right until husband's death). Under these particular circumstances, we cannot say Mid-State unreasonably delayed asserting its right to remove the shell home from Lot 243.

## CONCLUSION

For the foregoing reasons, this case is REVERSED and REMANDED. On remand, the Special Referee should determine the amount of reimbursement Mid-State should pay Purchaser for the improvements he made to the shell home prior to the institution of this lawsuit.

FINNEY, C.J., and MOORE, WALLER and BURNETT, JJ., concur.