THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Seaside Development Corporation, A South Carolina Corporation,       
Appellant,
 
 
 

v.

 
 
 
George W. Chisholm,       
Respondent.
 
 
 

Appeal From Beaufort County
Thomas Kemmerlin, Special Circuit Court 
 Judge

Unpublished Opinion No. 2003-UP-473
Submitted February 10, 2003  Filed 
 July 24, 2003

AFFIRMED

 
 
 
Stephen P. Groves, Carol B. Ervin and Stephen L. Brown, all 
 of Charleston; for Appellant.
Gerald M. Finkel, Esquireand Janet B. Haigler, both of Columbia; 
 for Respondent.
 
 
 

PER CURIAM:  Seaside Development Corporation 
 brought suit against Dr. George Chisholm seeking a declaration that a land conveyance 
 that occurred while Chisholms father was on Seasides board of directors was 
 null and void. The trial court found in favor of Chisholm.  Seaside appeals.  
 We affirm.
FACTS
Seaside was incorporated in 1959 
 for the purpose of acquiring, holding, developing, and selling a tract of land 
 on Hilton Head Island.  The tract is divided by Burkes Beach Road.  In 1962, 
 Seaside obtained title to a portion of the property on the North Side of the 
 road from the Ford family.  Seaside used proceeds of the sale of the lots on 
 the North Side to pay for the South Side and the remainder of the North Side.  
        
In September 1964, Seasides Board of Directors 
 met and adopted a resolution affecting the South Side which reads:

Resolution introduced and adopted by the majority that in 
 southern part of such area members of the Board of Directors would have available 
 for purchase two lots at $500 each providing the purchase price of said lots 
 be paid . . .September meeting and upon the purchase of each lot pursuit [sic] 
 to resolution the member of the board of directors be entitled and should receive 
 250 shares of Class B stock in the corporation by way of bonus.  This applies 
 to any directors who have previously purchased lots.
A new stockholder or member of the board of directors will 
 buy $500 worth of Class A stock before he will be allowed to purchase lots at 
 $500 per lot.  Any director elected before 1963 should be entitled to purchase 
 lots mentioned or described in this resolution.  

On December 12, 1965, Seaside executed a document entitled 
 Restrictions, Reservations, and Easements.  The Restrictions provided that 
 Seaside intended to sell lots on the South Side subject to certain conditions.  
 The Restrictions designated the property to be held by Seaside for commercial 
 development with the remaining lots to be developed for residential purposes.  

Chisholms father, Dr. David Chisholm, 
 who was a member of Seasides board of directors, purchased three lots on the 
 South Side in December of 1965 and placed the deeds in Chisholms name.  The 
 deeds were signed by Seasides president and secretary and were recorded. George 
 Chisholm was not affiliated in any way with the corporation at the time of his 
 fathers purchase of the lots.  The deeds were subject to the restrictions that 
 were previously recorded.  Many other directors purchased property pursuant 
 to the resolution.  
Mark Fields was one of Seasides founding 
 members and served on its Board.  Although Fields remained a shareholder, he 
 left the board in either 1962 or 1963 and did not attend meetings for many years 
 because he was displeased with the direction of the corporation.  
In the early 1990s, several Seaside shareholders 
 prevailed upon Fields to attend a meeting.  In 1992, Seaside shareholders elected 
 a new Board with Fields elected as Board chairman and president of Seaside. 
  After the new Board took control of the corporation, Seaside filed an action 
 against all of the grantees who received South Side lots pursuant to the 1964 
 resolution seeking deed cancellation, deed reformation, and the return of corporate 
 documents.  Chisholm and the other defendants asserted affirmative defenses 
 of statute of limitations, adverse possession, receipt of property under apparent 
 agency, estoppel, laches, and waiver.  They also requested affirmative relief 
 not relevant to this appeal. [1]   

In an order filed March 19, 1993, 
 the trial court directed Chisholm and Seasides former secretary to deliver 
 the corporations records to the new secretary.  After a hearing on the merits, 
 the trial court ruled in favor of Chisholm finding:  (1) the suit was barred 
 by the statute of limitations; (2) Chisholm obtained title to the land by adverse 
 possession; (3) apparent authority bound Seaside to the sale to Chisholm; and 
 (4) the equitable doctrines of estoppel, waiver and laches barred Seasides 
 suit.  Following the denial of its motion to alter or amend, Seaside filed this 
 appeal.  
LAW/ANALYSIS

I.  Statute of Limitations

Seaside argues the trial court erred in 
 holding S.C. Code Ann. § 15-3-340 (Supp. 2002) and S.C. Code Ann. § 15-3-350 
 (1976) eliminated its right to have Chisholms deeds voided and to recover ownership 
 of Chisholms lots.  We disagree.  
Section 15-3-340 sets forth the time limitation 
 for an action for recovery of real property.  This section provides:

No action for the recovery of real property or for the recovery 
 of the possession of real property may be maintained unless it appears that 
 the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed 
 of the premises in question within ten years before the commencement of the 
 action.

The trial court also found Seasides action 
 was barred by Section 15-3-350, which provides:

No cause of action or defense to an action founded upon 
 a title to real property or to rents or services out of the same shall be effectual 
 unless it appear that the person prosecuting the action or making the defense 
 or under whose title the action is prosecuted or the defense is made, or the 
 ancestor, predecessor or grantor of such person, was seized or possessed of 
 the premises in question within ten years before the committing of the act in 
 respect to which such action is prosecuted or defense made.

Chisholm filed the deeds to his property 
 on February 6, 1966.  Since then, either his father or he has paid the taxes 
 on the property.  This action was not commenced until December 17, 1992, well 
 over the ten-year statute of limitations period of Section 15-3-340 and Section 
 15-3-350.  
Seaside argues its action should not be 
 barred by these statutes because the corporation was completely controlled by 
 the officers and directors who took title to the South Side lots pursuant to 
 the 1964 resolution until 1992.  It asserts that until Fields and others who 
 were not in the inner circle took control of the corporation, it had no opportunity 
 to bring the action.  As Seaside emphasizes, this action is not a derivative 
 shareholders action.  However, such an action is what Fields and any other 
 outsider could have brought to address alleged wrongdoing by the inner circle.  
 See Ward v. Griffin, 295 S.C. 219, 367 S.E.2d 703 (Ct. App. 1988) 
 (stating a derivative action is a suit brought by a stockholder to enforce a 
 corporate right).  We find the trial court correctly applied Section 15-3-340 
 and Section 15-3-350 in ruling Seasides action was barred by the statute of 
 limitations.  

 II.  Laches 

Seaside argues the trial court erred in holding its 
 action was barred by the doctrine of laches.  We disagree.  

Laches is the neglect for an unreasonable and unexplained 
 amount of time, under circumstances permitting diligence, to do what in law 
 should have been done.  Importantly, delay in the assertion of a right does 
 not, in and of itself, constitute laches; rather, so long as there is no knowledge 
 of the wrong committed and no refusal to embrace opportunity to ascertain facts, 
 there can be no laches.  The failure to assert a right does not come into existence 
 until there is a reason or situation that demands assertion.  Moreover, the 
 party asserting laches must show it has been materially prejudiced by the other 
 partys delay. Finally, whether laches applies in a particular situation is 
 highly fact-specific, so each case must be judged on its own merits. 

Mid-State Trust, II v. Wright, 323 S.C. 303, 
 307, 474 S.E.2d 421, 423-24 (1996) (internal quotation marks and citations omitted).   

Chisholms deeds were filed and are a 
 matter of public record.  The deeds listed the consideration for the purchase.  
 The Restrictions were also on file, giving notice that lots on the South Side 
 would be sold for residential use and not solely held for commercial development.  
 Furthermore, there is no evidence in the record that the Seasides inner circle 
 concealed the minutes of the 1964 shareholders meeting at the time of the meeting 
 or in the years following.  The only evidence is that in 1993 Chisholm was ordered 
 to turn over all corporate records to Seasides new secretary.  Chisholm explained 
 that he had ask several former corporate officers about the records before he 
 was able to obtain them from a shareholders daughter.
 Chisholm has been prejudiced by the twenty-six-year 
 delay.  In that time over half of the original directors, who could be witnesses 
 in this action, have passed away.  In addition, memories of witnesses have faded 
 over time.  Furthermore, as the trial court found, Chisholm has paid the taxes 
 on the property since his deeds were filed in 1966.  We find the trial court 
 did not err in holding Seasides claims were barred by laches.  
Accordingly, the order of the trial court 
 is 
 AFFIRMED.2
CONNOR, ANDERSON, and HUFF, JJ., concur.

 
 [1] 
 Around 1994, Seaside received an offer to purchase the South Side from 
 the Town of Hilton Head.  All of the named parties in the lawsuit, except 
 Chisholm, accepted lots on the North Side in exchange for their South Side 
 lots and settled the lawsuit or sold their property directly to the town.  
 

 
 2 Because we affirm the trial court 
 for the above reasons, we need not reach Seasides remaining issues.  See 
 Fuller-Ahrens Partnership v. S.C. Dept of Highways & Pub. Transp., 
 311 S.C. 177, 427 S.E.2d 920 (Ct.App.1993) (holding where an appellate court 
 affirms trial court's grant of summary judgment on a particular ground, the 
 appellate court need not discuss the remaining grounds).