# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Annie L. Myers, Billy R. Nobles, M. Elaine Nobles, James Lewis Willis, James and Lucille Mason, Joann Atkinson, Willie Clyde Smith, Clyde B. Broadwell, Jr., and Stephen Pettigrew of Sawney Creek Farm, LLC, James Tuberfille, Dean Burton, Robert W. and Minnie O. New, Walter L. Anders, and Mary and Homer Martin, Respondents,

v.

Town of Calhoun Falls and Savannah Valley Trails, Inc., Appellants.

Appellate Case No. 2020-000578

———————

Appeal From Abbeville County
Eugene C. Griffith, Jr., Circuit Court Judge

———————

Opinion No. 5998
Submitted April 3, 2023 – Filed July 12, 2023

———————

**AFFIRMED**

———————

Douglas Lamar Bell, of McDonald Patrick Poston Hemphill & Roper, LLC, of Greenwood, for Appellants.

Clarence Rauch Wise, of Greenwood, for Respondents.

———————

**WILLIAMS, C.J.:** In this property dispute involving the abandonment of a railway line, Annie Myers and other property owners (collectively, Respondents) sought a judgment against Savannah Valley Trails, Inc. and the Town of Calhoun

Falls (collectively, SVT) declaring Respondents were the property owners in fee simple of their respective properties, which were each subject to an easement held by Seaboard System Railroad, Inc. (Railroad).  On appeal, SVT argues (1) the trial court lacked subject matter jurisdiction; (2) the doctrine of laches barred Respondents' claims; and (3) the trial court erred in finding that when Railroad abandoned the line at issue, the rights accompanying the previously granted easements reverted back to Respondents.  We affirm.

**FACTS/PROCEDURAL HISTORY**

At trial, the parties stipulated to the following facts.  The properties at issue abut a preexisting railway line extending approximately twenty-four miles from McCormick County to Abbeville County (the line).  In March 1878, the State chartered the Savannah Valley Railroad Company (SVR) to construct the railroad. Respondents' predecessors in title granted SVR a right-of-way on their respective properties to allow the construction and operation of the railroad.  The deeds conveying the easements stated the following or something similar.[1]

> [The property owner] doth give grant bargain and sell unto the said Savannah Valley Rail Road Company and their successors and assigns the Right of Way over which to pass at all times . . . *for the purpose of running erecting and establishing thereon a Railroad . . . upon condition and it is expressly understood that should the said Rail [R]oad contemplated as aforesaid be not erected and established* on and along said strip, tract or parcel of land described in the above and foregoing indenture, then, said Indenture is to be *wholly null and void and of no effect* and the said [owner] for his heirs and assigns will warrant and defend the Title . . . .

(emphases added).  Each successor in title received a deed subject to the easements held by SVR and its successors and assigns.  SVR transferred its interest to Seaboard Coastline Railroad Company, which conveyed its interest to Railroad.

---

[1] The parties submitted one of the original easements, as a stipulated exhibit, to serve as a representative example of the easements obtained by SVR.

In the late 1970s, Railroad decided to close the track and seek permission from the Interstate Commerce Commission (ICC)[2] to abandon the line. On November 21, 1978, an ICC committee issued a decision allowing abandonment of the line. On March 2, 1979, the ICC issued a final decision permitting Railroad to abandon the line. In its decision, the ICC stated:

> (2) If the authority granted by this certificate and decision is exercised, [Railroad] shall submit two copies of the journal entries showing the retirement of the line from service, and shall advise this Commission in writing, immediately after abandonment of the line of railroad, of the date on which the abandonment actually took place.
>
> (3) If the authority granted in this certificate and decision is not exercised within one year from its effective date, it shall be of no further force and effect.

Railroad subsequently removed the tracks. On February 25, 1980, Railroad sent a letter to the ICC stating, "In compliance with the second ordering paragraphs of this Certificate and Decision, please be advised that this track was abandoned as of February 15, 1980." The exact date Railroad ceased operations is unknown, but the parties stipulate the tracks were completely removed from the railway corridor by the date of the February 25, 1980 letter.

Railroad subsequently conveyed its property interest by quitclaim deed to Clarks Hill – Russell Authority of South Carolina (Clarks Hill). Clarks Hill then conveyed its property located in McCormick County to the Ninety-Six District Resource Conservation and Development Council, Inc., which conveyed the property to SVT on June 28, 2012. Clarks Hill also conveyed its property located in Abbeville County, via quitclaim deed, to the Town of Calhoun Falls on April 12, 2012.

After the 1980 letter acknowledging compliance with the abandonment requirements, neither Railroad nor Respondents made any permanent improvements to the properties.[3] On July 5, 2016, the McCormick County property owners filed an action seeking declaratory relief as to property rights

---

[2] The ICC is now called the Surface Transportation Board (STB).
[3] The parties acknowledge one of the property owners installed a minor structure on his property.

regarding the previously granted easements, after SVT began construction of a walking trail on the former railway line.[4]  The Abbeville County property owners similarly filed suit on March 29, 2018, and the trial court consolidated the matters with consent of the parties.

On November 14, 2019, the trial court held a bench trial and took the matters under advisement.  Following the trial, the parties submitted briefs at the request of the court.  On February 21, 2020, the trial court issued two orders finding (1) Railroad abandoned the line; (2) when Railroad abandoned the line, the easements terminated and the associated property rights reverted to Respondents; and (3) the doctrine of laches did not bar Respondents' claims.  This appeal followed.

**ISSUES ON APPEAL**

I.   Did the trial court have subject matter jurisdiction?

II.  Did the trial court err in declaring Railroad abandoned the line and Respondents were the owners of the disputed property?

**STANDARD OF REVIEW**

"In an action at law, tried without a jury, the appellate court standard of review extends only to the correction of errors of law." *Okatie River, L.L.C. v. Se. Site Prep, L.L.C.*, 353 S.C. 327, 334, 577 S.E.2d 468, 472 (Ct. App. 2003).  "Questions regarding credibility and the weight of the evidence are exclusively for the trial court." *Regions Bank v. Strawn*, 399 S.C. 530, 537, 732 S.E.2d 230, 234 (Ct. App. 2012).  "The nature of the underlying issue determines whether a suit for declaratory judgment is legal or equitable." *Eldridge v. City of Greenwood*, 331 S.C. 398, 416, 503 S.E.2d 191, 200 (Ct. App. 1998).  The present case involves the determination of title to real property, which is a question of law. *See id.* ("The dispositive question in this case concerns the determination of title to real property, which is a legal issue.").  "Moreover, while the scope or extent of an easement is a question in equity, the existence of an easement is a factual question in an action at

---

[4] The National Trail System Act, 16 U.S.C. §§ 1241-1251, "provides an alternative to abandoning a railroad right-of-way [that] allows a railroad to negotiate with a state, municipality, or private group (the 'trail operator') to assume financial and managerial responsibility for operating the railroad right-of-way as a recreational trail." *Caldwell v. United States*, 391 F.3d 1226, 1229 (Fed. Cir. 2004).

law." *Id.* "It follows that termination of an easement by abandonment is a factual question in an action at law as well." *Id.*

## LAW/ANALYSIS

## I.    SUBJECT MATTER JURISDICTION

SVT argues the trial court erred in exercising subject matter jurisdiction over the property dispute because Respondents failed to prove Railroad abandoned the line in compliance with the ICC's order.  Specifically, SVT asserts Respondents failed to present evidence showing Railroad submitted the requested journal entries illustrating the retirement of the line.  SVT therefore contends Railroad never abandoned the line and the trial court's order should be vacated for lack of subject matter jurisdiction because the STB's jurisdiction preempts the jurisdiction of the trial court.  We disagree.

Subject matter jurisdiction is a court's "power to hear and determine cases of the general class to which the proceedings in question belong." *Simmons v. Simmons*, 370 S.C. 109, 113, 634 S.E.2d 1, 3 (Ct. App. 2006) (quoting *Watson v. Watson*, 319 S.C. 92, 93, 460 S.E.2d 394, 395 (1995)).  "Claims of lack of subject matter jurisdiction may be raised at any time, and subject matter jurisdiction may not be waived by filing responsive pleadings or otherwise consenting to the jurisdiction of a particular court." *Eldridge*, 331 S.C. at 408, 503 S.E.2d at 196.

> A railroad that receives authority from the Board to abandon a line (in a regulated abandonment proceeding under 49 U.S.C. 10903, or by individual or class exemption issued under 49 U.S.C. 10502) *shall file a notice of consummation with the Board to signify that it has exercised the authority granted and fully abandoned the line (e.g., discontinued operations, salvaged the track, canceled tariffs, and intends that the property be removed from the interstate rail network).  The notice shall provide the name of the STB proceeding and its docket number, a brief description of the line, and a statement that the railroad has consummated, or fully exercised, the abandonment authority on a certain date.* The notice shall be filed within 1 year of the service date of the decision permitting the abandonment (assuming that the railroad intends to consummate the

abandonment). . . . If, after 1 year from the date of service of a decision permitting abandonment, consummation has not been effected by the railroad's filing of a notice of consummation, and there are no legal or regulatory barriers to consummation, the authority to abandon will automatically expire. In that event, a new proceeding would have to be instituted if the railroad wants to abandon the line.

49 C.F.R. § 1152.29(e)(2) (emphasis added).

"Even though preemption involves subject matter jurisdiction, the party claiming preemption bears the burden of proving it." *Eldridge*, 331 S.C. at 411, 503 S.E.2d at 197. Therefore, SVT bears the burden of proving Railroad's abandonment of the line was incomplete. We find it failed to do so. On March 2, 1979, Railroad received a certificate of abandonment from the ICC. In compliance with abandonment requirements, Railroad sent a letter to the ICC on February 25, 1980, including the docket number for the abandonment, a brief description of the line, and a statement indicating the line was officially abandoned on February 15, 1980. Although the record does not contain any further reference to the journal entries requested in the certificate of abandonment, SVT failed to show Railroad did not comply with the request. In fact, the record does not contain any evidence showing further involvement or communication from the ICC after the issuance of the certificate of abandonment. Thus, we hold the trial court did not err in exercising its subject matter jurisdiction and in finding Railroad abandoned the line in 1980. *See Eldridge*, 331 S.C. at 414, 503 S.E.2d at 199 ("The ICC's jurisdiction . . . terminated upon issuance of the certificate of abandonment, and resolution of what interests the agreements and conveyances transferred is a matter for state law.").

## II.    DECLARATORY JUDGMENT

### A.    Laches

SVT argues the trial court erred in finding the doctrine of laches did not bar Respondents' claims. SVT contends the trial court erred in finding SVT failed to sufficiently demonstrate prejudice should Respondents be allowed to pursue their claims.

"Laches is an equitable doctrine defined as 'neglect for an unreasonable and unexplained length of time, under circumstances affording opportunity for diligence, to do what in law should have been done.'" *Historic Charleston Holdings, LLC v. Mallon*, 381 S.C. 417, 432, 673 S.E.2d 448, 456 (2009) (quoting *Hallums v. Hallums*, 296 S.C. 195, 198, 371 S.E.2d 525, 527 (1988)). "In order to establish laches as a defense, a party must show that the complaining party unreasonably delayed its assertion of a right, resulting in prejudice to the party asserting the defense of laches." *Id.* "The party seeking to establish waiver or laches has the burden of proof." *Jenkins v. Refuge Temple Church of God in Christ, Inc.*, 424 S.C. 320, 334, 818 S.E.2d 13, 20 (Ct. App. 2018). "The failure to assert a right 'does not come into existence until there is a reason or situation that demands assertion.'" *Mid-State Tr., II v. Wright*, 323 S.C. 303, 307, 474 S.E.2d 421, 423 (1996) (quoting *Ex parte Stokes*, 256 S.C. 260, 266, 182 S.E.2d 306, 309 (1971)). "Moreover, the party asserting laches must show it has been materially prejudiced by the other party's delay." *Id.*

In its order, the trial court found the issue of laches was a close question, noting Respondents' failure to assert their rights for approximately thirty years was unreasonable. However, the court ultimately found SVT failed to show it suffered prejudice from Respondents' delay. It stated:

> The Defendants have constructed a portion of the trail project, erecting signs and restoring a bridge on a portion of the trail. The Defendants assert that they have secured grants and incurred indebtedness for the project, although those amounts are not in evidence. Nothing is in evidence to show specific amounts spent or set aside for work on the subject property. The Defendants also assert in their brief that they face potential liability if the trail is not completed. The specifics of said liability are not in evidence. . . . The Court notes that a portion of the trail has been completed. There is no evidence of the funds required to complete the trail on the subject property or whether this money has been obtained or spent on the portions affected by this Order.

Initially, we note SVT failed to plead laches as an affirmative defense in its answer and counterclaim. *See Earthscapes Unlimited, Inc. v. Ulbrich*, 390 S.C. 609, 615, 703 S.E.2d 221, 224 (2010) ("A party in replying to a preceding pleading shall affirmatively set forth his or her defenses."); Rule 12(b), SCRCP ("Every defense,

in law or fact, to a cause of action in any pleading . . . shall be asserted in the responsive pleading thereto . . . ."). Thus, the trial court could have declined to address the defense. Nevertheless, we agree that SVT failed to present evidence that would equip the trial court to make a finding of prejudice beyond mere conjecture. Accordingly, we affirm the trial court on this issue.

### B. Declaratory Relief

SVT argues the trial court erred in granting Respondents declaratory relief. SVT asserts the trial court erred in finding Railroad abandoned the line. SVT additionally argues the trial court erred in finding Respondents owned the disputed properties in fee simple because SVT owned the properties under color of title. SVT contends Respondents failed to show what property rights Railroad possessed because they only admitted one deed as an exhibit. We disagree.

As discussed above, the trial court did not err in finding Railroad abandoned the line in 1980. Railroad ceased operations, sought permission for abandonment from the ICC, removed the tracks from the railway corridor, and transferred its property interests. Further, nothing in the record indicates Railroad failed to comply with the requirements of the certificate of abandonment. Thus, pursuant to our precedent, the easement rights Railroad held on Respondents' properties reverted to Respondents at the time of abandonment. *See Eldridge*, 331 S.C. at 422, 503 S.E.2d at 203 (affirming the trial court's ruling that the railroad's abandonment of the railway line extinguished the easements granted for construction and operation of the railroad); *id.* ("To hold otherwise would effectively gut the longstanding rule that an easement is extinguished upon the railroad's abandonment of the right of way for railway purposes."). Therefore, the trial court properly granted Respondents declaratory relief as to the rights of the properties abutting the former railway line. Accordingly, we affirm the trial court.

Regarding SVT's challenge to the trial court's use of the representative easement deed, this argument is unpreserved for appellate review as SVT failed to challenge the use of the deed when it was admitted by the parties as a stipulated exhibit. *See Lucas v. Rawl Fam. Ltd. P'ship*, 359 S.C. 505, 510–11, 598 S.E.2d 712, 715 (2004) ("It is well settled that, but for a very few exceptional circumstances, an appellate court cannot address an issue unless it was raised to and ruled upon by the trial court.").

### CONCLUSION

Accordingly, the orders of the trial court are

**AFFIRMED.**[5]

**GEATHERS and VERDIN, JJ., concur.**

---

[5] We decide this case without oral argument pursuant to Rule 215, SCACR.