681 S.E.2d 36

**Melenia TROTTER, Respondent,**

**v.**

**TRANE COIL FACILITY, Employer, and Phoenix
Insurance Company, Carrier, Appellants.**

**No. 4561.**

Court of Appeals of South Carolina.

Heard April 22, 2009.

Decided June 12, 2009.

Rehearing Denied Aug. 25, 2009.

---

110

Rebecca Anne Roberts and Byron P. Roberts, of Chapin, for Appellants.

Ann M. Mickle, of Rock Hill, Stephen B. Samuels, of Columbia, for Respondent.

WILLIAMS, J.

Trane Coil Facility and Phoenix Insurance Company (collectively referred to as Employer) appeal from the circuit court's

order affirming the Appellate Panel of the Workers' Compensation Commission's (the Appellate Panel) finding that Melenia Trotter (Claimant) was entitled to workers' compensation benefits for an injury to her lower back. We reverse in part, vacate in part, and remand.

## FACTS/PROCEDURAL HISTORY

Claimant began working for Spherion Temporary Services (Spherion) in August 2004. Spherion provides temporary workers to companies including Employer. Claimant began working for Employer around December 2004.[1] Employer manufactures and supplies heating, ventilation and air conditioning systems, and Claimant worked in the "turb and trim" position, turbulating and trimming coils.

According to Claimant's testimony, in December 2004 she began to experience "low back pain" and stiffness from turbulating and trimming coils. Claimant allegedly reported her back pain to her team leader, Darryl Cloud, on several occasions. She also claims to have reported the pain to Dwayne Duboo, Employer's safety director, on one occasion as well.

On January 31, 2005, Claimant felt a "pop" in her lower back area while she was turbulating. Although she continued to work all week, the pain steadily increased. Claimant stated she kept Cloud informed of her situation. On February 4, 2005, Claimant saw her supervisor, Pat Charleston, and allegedly informed him she hurt her back turbulating and was going to have to go to the doctor. Claimant stated Charleston advised her he would send Duboo to speak with her. Claimant then left to go home without hearing from Duboo.

On February 5, 2005, Claimant went to the emergency room due to her lower back pain. Claimant received a shot in the hip and some pain medication, and she made an appointment with Dr. W. Scott James, III, an orthopedist, for the following week.

On February 7, 2005, Dr. James examined Claimant and scheduled an MRI. Claimant testified she called Carlos Mays

---

1. Claimant's start date with Employer is in dispute. Claimant argues she began working for Employer November 15, 2004, while Employer claims she did not begin until December 6, 2004.

in Employer's personnel department to inform him Dr. James had advised her to not work. Claimant stated Mays told her to bring in the doctor's slip, and Charleston made of copy of the document.

Following the MRI, Dr. James recommended Claimant undergo surgery, which she did on February 21, 2005. Claimant applied for and began receiving short-term disability benefits from Employer, which ended in April 2005.

On February 28, 2005, Claimant participated in a conference call with Charleston, Duboo, Mays, and Adrian Barnhill, Employer's human resource manager. During this call, Claimant revealed she had undergone surgery, and she subsequently provided a written statement documenting her claim.

On May 11, 2005, Claimant filed a Form 50 alleging "an accidental injury to her back on 2–4–05" caused by repetitive "lifting, pulling and pushing." Claimant also stated she gave verbal notice to her "supervisor" on February 4, 2005. In response, Employer denied the claim pending further investigation because (1) Claimant failed to provide notice prior to proceeding with the surgery, and (2) Employer found no evidence Claimant's back complaints and her job duties were causally connected. A hearing was scheduled for September 20, 2005.

Prior to the hearing, Employer made two motions. The first motion was to add Spherion as a defendant in the suit. Employer made this request because "Claimant's medical report state[d] that 'this [medical condition] has really been going on for the past several months'[, and] . . . Claimant ha[s] only been employed by [Employer] for approximately two and a half months." The single commissioner denied the motion.

In the second motion, Employer requested a continuance due to the difficulty it faced in scheduling a deposition with Dr. James. Employer originally scheduled Dr. James's deposition for September 7, 2005. Due in part to Employer's plan to also depose Claimant on that date, Employer rescheduled Dr. James's deposition for September 14, 2005. Dr. James later canceled the deposition and rescheduled for October 3, 2005. The single commissioner denied the motion.

At the hearing, Employer requested the record remain open for Dr. James's deposition. Employer additionally requested the record remain open for the deposition of Charleston. He was unable to attend the hearing due to his hospitalization for stomach cancer complications. The single commissioner denied the request as to Dr. James's deposition, finding Employer had the opportunity to depose him but chose not to for strategic reasons. The single commissioner, however, granted the request as to Charleston and agreed to leave the record open for fourteen days. As of October 4, 2005, Charleston's doctors stated he was still incapacitated, so Employer requested an "additional period of time to allow the parties to proceed with the deposition of Mr. Charleston." This request was granted, and the single commissioner allowed the record to remain open until October 20, 2005. Notice of this extension was mailed to Employer October 20, 2005, and was therefore received after the record had already been closed.

The single commissioner issued an order on May 5, 2006. In this order, the single commissioner found:

That on or about December 31, 2004[, Claimant] felt a pop in her back while working. She continued to work until February 4, 2005, causing further injury to her low back.... [Claimant] properly and timely reported the problems with her back to both her team leader[, Cloud,] and to her supervisor, Pat Charleston.... [O]n [Claimant's] first visit to a medical doctor [ (Dr. James) ] after the injury, she reported a work related injury to her lower back.... Dr. James causally related her low back complaints and resulting injury to the job that [Claimant] performed with [Employer].... [T]he workers' compensation carrier for [Employer] shall reimburse [Claimant's] private insurance carrier for all causally related medical treatment incurred since the accident date of December 31, 2004.... [Employer] is the employer responsible for this claim and that all benefits referenced in this Order shall be provided through them.

The Appellate Panel sustained the single commissioner's order in its entirety, as did the circuit court. This appeal followed.

## STANDARD OF REVIEW

The Administrative Procedures Act (the APA) governs this Court's standard of review in appeals from the Appellate Panel. *Hopper v. Terry Hunt Constr.*, 373 S.C. 475, 479, 646 S.E.2d 162, 164 (Ct.App.2007). "In an appeal from the [Appellate Panel], neither this Court nor the circuit court may substitute its judgment for that of the [Appellate Panel] as to the weight of the evidence on questions of fact." *Id.* However, an appellate court may reverse or modify a decision of the Appellate Panel "if the findings and conclusions of the administrative agency are affected by error of law, clearly erroneous in view of the reliable and substantial evidence on the whole record, or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." *Gray v. Club Group, Ltd.*, 339 S.C. 173, 182, 528 S.E.2d 435, 440 (Ct.App.2000).

## LAW/ANALYSIS

Employer argues the Appellate Panel abused its discretion by affirming the single commissioner's refusal to grant Employer's pretrial motion for a continuance in order to allow for the depositions of two key witnesses to be taken. We agree.

"Administrative agencies are required to meet minimum standards of due process," and "[i]n cases where important decisions turn on questions of fact, due process at least requires an opportunity to present favorable witnesses." *Smith v. S.C. Dep't of Mental Health*, 329 S.C. 485, 500, 494 S.E.2d 630, 638 (Ct.App.1997). "An administrative or quasi judicial body is allowed a wide latitude of procedure and [is] not restricted to the strict rule of evidence adhered to in a judicial court." *Hallums v. Michelin Tire Corp.*, 308 S.C. 498, 504, 419 S.E.2d 235, 239 (Ct.App.1992). Great liberality is to be exercised in allowing the introduction of evidence in workers' compensation proceedings. *Hamilton v. Bob Bennett Ford*, 339 S.C. 68, 70, 528 S.E.2d 667, 668 (2000); *see Brown v. La France Indus.*, 286 S.C. 319, 324–25, 333 S.E.2d 348, 351 (Ct.App.1985) (stating a single commissioner has similar discretion as that of a trial judge in deciding whether to reopen a case for the introduction of additional evidence).

A motion for continuance due to the absence of a material witness is addressed to the judge's discretion, and therefore, the ruling will not be disturbed unless it is shown to be an abuse of discretion. *Logan v. Gatti*, 289 S.C. 546, 548, 347 S.E.2d 506, 507 (Ct.App.1986). This abuse of discretion must result in prejudice to the moving party. *Hudson v. Blanton*, 282 S.C. 70, 74, 316 S.E.2d 432, 434 (Ct.App.1984). Additionally, "[t]o justify a continuance, the moving party must show not only the absence of some material evidence but also due diligence on his part to obtain it." *Id.*

As to the deposition of Charleston, we find the Appellate Panel abused its discretion by affirming the single commissioner's decision to not grant Employer's motion for a continuance and to close the record without Charleston's deposition being taken. As Claimant's supervisor, Charleston was the person whom Claimant was to inform regarding any work related injury. From the beginning, Employer contested Claimant's claim arguing Claimant failed to give notice of her injury prior to seeking medical help from Dr. James. Charleston's testimony would undoubtedly be material evidence to the issue of notice, and without his testimony, Employer had no way of contesting the issue. Charleston's testimony was so crucial and important to Employer's defense that its exclusion constitutes prejudicial error. *See Guffey v. Columbia/Colleton Reg'l Hosp., Inc.*, 364 S.C. 158, 170–71, 612 S.E.2d 695, 701 (2005) (stating an appellate court considers whether "the wrongly excluded evidence or testimony was so crucial and important in proving the aggrieved party's claim or defense that its exclusion constitutes prejudicial error").

Additionally, the record contains ample evidence Employer exercised due diligence in obtaining Charleston's deposition, but through no fault of its own was unable to provide that evidence prior to the closing of the record. Employer planned to have Charleston testify in person at the hearing, but when that was not possible because of Charleston's hospitalization, Employer then sought to depose Charleston at the first opportunity his doctors would allow. The record, however, was closed before Employer was able to do so. While the exact date on which Charleston would become available for a deposition was unknown, Employer did not make any unrea-

sonable requests, such as keeping the record open indefinitely. In fact, the record was only left open for one month, while the single commissioner's order was not issued until nearly seven months following the hearing.

Because we find the evidence Employer contemplated offering through Charleston's testimony was crucial, and because Employer exercised due diligence in obtaining that testimony, we find the Appellate Panel abused its discretion by not granting Employer's motion for continuance or keeping the record open for Charleston's deposition. *See Logan,* 289 S.C. at 548–49, 347 S.E.2d at 507–08 (holding it was "an error of law and consequently an abuse of discretion" to deny a motion for continuance when "only a two and one-half month continuance" was sought, the motion was based upon the witness's absence after being unexpectedly ordered to sea, and the deposition was purely a discovery deposition); *see also Doe v. Batson,* 345 S.C. 316, 322, 548 S.E.2d 854, 857 (2001) (finding respondent should have been permitted to complete discovery when the record did not "support a finding that [respondent] was dilatory in pursuing discovery" because depositions were scheduled for the week following the hearing but were postponed and this delay was not solely attributable to respondent).

Concerning the testimony of Dr. James, we likewise find the Appellate Panel abused its discretion by affirming the single commissioner's order not allowing for either a continuance or for the record to remain open for his deposition to be taken. Dr. James was Claimant's treating physician and, as such, had unique and crucial testimony which could not be offered by any other witness or through his medical records alone. By not allowing Employer to take Dr. James's deposition, Employer was left with no way of challenging Claimant's medical claims. The Appellate Panel's ruling was, therefore, not harmless to Employer, and Employer was prejudiced. *See Means v. Gates,* 348 S.C. 161, 171, 558 S.E.2d 921, 926 (Ct.App.2001) ("[W]e find exclusion of the [expert testimony of a neuropsychologist] was not harmless error as there was no equivalent testimony presented to this effect.").

Furthermore, Employer sought to depose Dr. James prior to the hearing, but due to scheduling difficulties, the

deposition was scheduled for a date after the hearing. Although Employer rescheduled the deposition once, Employer exercised due diligence to try and take the deposition prior to the hearing. Dr. James, rather than Employer, was the party unavailable before the hearing. The record contained no evidence of misconduct, intentional or otherwise, by Employer that would warrant the exclusion of this crucial witness. *See Orlando v. Boyd,* 320 S.C. 509, 512, 466 S.E.2d 353, 355 (1996) ("[T]here is no evidence of intentional misconduct in the record which would warrant the exclusion of a crucial witness.").

We find Employer exercised due diligence in trying to depose both Dr. James and Charleston in a timely manner, and Employer was prejudiced by the exclusion of their testimony because it was necessary evidence for the Appellate Panel to make an informed decision. Thus, the Appellate Panel abused its discretion in excluding this testimony. We, therefore, reverse the order of the circuit court affirming the Appellate Panel and remand the case to the Appellate Panel to allow for additional testimony from Dr. James and Charleston.[2] At the conclusion of this testimony, the Appellate Panel shall issue new findings of facts and conclusions of law based on the overall record.

In light of our decision to reverse and remand this case for further testimony, and because we believe the additional testimony could affect Employer's remaining arguments, we vacate the remainder of the circuit court's order and remand all issues to the Appellate Panel for reconsideration following the taking of the additional testimony.[3] *See*

---

2. From a practical standpoint, the single commissioner's two rulings on keeping the record open for depositions appear inconsistent. Because the single commissioner was already allowing the record to remain open for Charleston's deposition, allowing the record to also remain open for the deposition of Dr. James would cause no further delay.

3. Employer's remaining arguments, which should all be reconsidered on remand, are: (1) the Appellate Panel abused its discretion by refusing to grant Employer's pretrial motion to add Spherion as an additional defendant; (2) the Appellate Panel erred in finding Claimant suffered a compensable injury arising out of and in the course of her employment; (3) the Appellate Panel erred in determining Claimant suffered a compensable injury by accident arising out of and in the

*Smith,* 329 S.C. at 501–02, 494 S.E.2d at 638 (stating while an appellate court recognizes the Appellate Panel is the sole fact-finder in workers' compensation cases, the improper exclusion of testimony by the single commissioner amounted to an error of law that deprived the claimant of his right to present his case and deprived the Appellate Panel of the evidence it needed to make its findings of fact); *see, e.g., Ellerbe v. Ellerbe,* 323 S.C. 283, 297, 473 S.E.2d 881, 889 (Ct.App.1996) (holding the issue of alimony should be remanded for reconsideration because the issue of equitable division was being remanded and would affect the issue of alimony).

## CONCLUSION

Based on the foregoing, the circuit court's order is

**REVERSED IN PART, VACATED IN PART, and RE-MANDED.**

HUFF and KONDUROS, JJ., concur.

─────

course and scope of her employment;  and (4) the Appellate Panel erred in failing to address the issue of credit for disability payments made outside the scope of a work related injury.