714 S.E.2d 289

**Melenia TROTTER, Employee, Petitioner,**

**v.**

**TRANE COIL FACILITY, Employer, and Phoenix Insurance Company, Carrier, Respondents.**

**No. 27024.**

Supreme Court of South Carolina.

Heard June 22, 2011.
Decided Aug. 15, 2011.

638

640

Ann McCrowey Mickle, of Mickle & Bass, of Rock Hill, and Stephen Benjamin Samuels, of Samuels Law Firm, L.L.C., of Columbia, for Petitioner.

Rebecca Anne Roberts and Byron P. Roberts, both of Roberts Law Group, L.L.C., of Chapin, for Respondents.

Justice BEATTY.

Melenia Trotter ("Trotter") was awarded workers' compensation benefits for a back injury by the South Carolina Workers' Compensation Commission ("Commission"). The circuit court affirmed. The Court of Appeals reversed in part, vacated in part, and remanded, finding the Commission abused its discretion in denying requests made by the employer and its carrier, Trane Coil Facility and Phoenix Insurance Co. (collectively, "Trane"), for a continuance or to hold the record open for the depositions of two witnesses to be taken. *Trotter v. Trane Coil Facility*, 384 S.C. 109, 681 S.E.2d 36 (Ct.App.2009). This Court granted Trotter's petition for a writ of certiorari to review the opinion of the Court of Appeals. We reverse.

## I.  FACTS

Trotter was employed by Spherion, a temporary agency, in August 2004. At that time, she was sent to work for a 90–day trial period with Trane, a manufacturer of industrial air-conditioners in Blythewood, South Carolina.

After completing the probationary period, Trotter was hired by Trane for a permanent position in November 2004. Trotter worked at "the turb and trim station," which consisted of using an "air driver" (a screwdriver with a blade) to trim down tubes to the same length, and then "turbulating" the tubes by putting a spring into each tube. Trotter was on her feet most of the day and had to "push" into the tubes and move her lower body, particularly her hips, back and forth to perform her work. She spent approximately ninety percent of each workday, from 5:30 a.m. to 4:00 p.m., engaged in this activity.

According to Trotter, she began having spasms and some lower back pain that extended down her legs in December 2004, which she mentioned to her Team Leader, Darryl Cloud,

and to Duane DeBoo,[1] Trane's Safety Coordinator. Trotter continued to work with increasing discomfort in December 2004 and January 2005.

On Monday, January 31, 2005, Trotter was "turbulating the coil" when she felt "like something popped in [her] back" and experienced "excruciating pain." Trotter stated she reported this incident to Cloud, her Team Leader.

Trotter worked all that week with worsening pain and "really bad" back spasms. On Friday, February 4, 2005, she reportedly told Cloud and her supervisor, Pat Charleston, that she had hurt her back while turbulating and that she was in pain and needed to have something done. Trotter stated Charleston advised her that he would get DeBoo to come over and talk to her, but she did not see DeBoo before her shift ended and she went home.

That same Friday, Trotter made an appointment for the following Monday to see Dr. W. Scott James, III, a physician with Carolina Orthopaedic Surgery Associates. However, on Saturday, February 5th, Trotter had "[t]errible pain," so she went to the emergency room at Piedmont Medical Center in Rock Hill.

Trotter was seen by Dr. James on Monday, February 7, 2005. She told him that she had been having pain at work for the past "several months." He scheduled an MRI and gave her a doctor's note to stay off work. Trotter called Trane's personnel office and spoke to Carlos Mays, who told her to bring in the doctor's slip. She did so and allegedly showed it to her Supervisor, Charleston, who made a copy of it. Trotter did not return to work after February 4, 2005.

The MRI revealed Trotter had a large, herniated disc at L5–S1 with marked compression of the right S1 nerve root. Following Dr. James's recommendation, Trotter underwent surgery on February 21, 2005.[2] Dr. James indicated in his

---

1.   Several versions of DeBoo's name appear in the decisions of this case, but the spelling above is supported by the record.

2.   Dr. James's medical notes of April 22, 2005 indicate that due to her significant pain and the fact there could be a delay in obtaining approval of a workers' compensation claim, he discussed with Trotter the option of going under her regular insurance, but told her that it was

notes that Trotter likely had a bad disc in her back that was aggravated by her job change.

Within a week after her surgery, Trotter called DeBoo and left a message regarding her work injury, but he did not return her call. Trotter called the personnel office and spoke to Adrian Barnhill, Trane's Human Resources Manager, who arranged a conference call on February 28, 2005 with Barnhill, DeBoo, Charleston, Mays, and Trotter. Trotter told them that she had had a work-related accident and that the turbulator had caused her to suffer a back injury. Trotter had never filed a workers' compensation claim before, so she asked them what she needed to do. They asked her to submit a written statement providing details of the accident, which she did on April 14, 2005.

On May 11, 2005, Trotter filed a Form 50 alleging an injury by accident to her back. Trane denied the claim, maintaining it did not receive notice of the injury until after Trotter's surgery and that there was insufficient proof of a work-related injury.

A hearing was held on September 20, 2005 before a single commissioner.[3] By order filed May 5, 2006, the commissioner found Trotter had established a compensable claim for her back and that Trane was responsible for all causally-related medical treatment, both past and future as directed by Dr. James, and "temporary total benefits from Mrs. Trotter's last day of work and continuing."

The commissioner noted that she had denied Trane's motions for a continuance or to leave the record open in order to take the depositions of Dr. James and Charleston and to add Spherion as a party. The commissioner stated Trane had the

---

her decision and he would be willing to treat her, either way. Trotter decided to proceed under her regular insurance rather than delay her surgery.

3. DeBoo, Charleston, Cloud, and Mays were not present at the hearing. Trane had terminated Cloud for misconduct, including not following procedures, not showing up for work, and taking part in inappropriate conversations, and his whereabouts were unknown. Charleston was hospitalized and scheduled to have surgery the day of the hearing. Barnhill was the only Trane employee to appear and testify for the employer. No explanation was given for Trane's failure to call DeBoo and Mays as witnesses.

opportunity to depose Dr. James prior to the hearing, but it chose not to do so at that time for strategic reasons. Further, Charleston was scheduled to appear at the hearing, but he became incapacitated suddenly due to illness. She twice granted motions to hold the record open for Charleston's deposition to be taken, but no deposition was ever scheduled due to Charleston's continuing incapacity, so she closed the record. Finally, as to adding Spherion as a defendant, the commissioner found Trotter was employed with Trane, not Spherion, at the time of her injury.

An Appellate Panel of the Commission unanimously upheld the commissioner's order and adopted the findings of fact and conclusions of law contained therein in full. The circuit court affirmed.

Trane appealed to the Court of Appeals, which reversed in part, vacated in part, and remanded. *Trotter v. Trane Coil Facility*, 384 S.C. 109, 681 S.E.2d 36 (Ct.App.2009). The Court of Appeals found the Commission abused its discretion in denying Trane's motions for a continuance or to hold the record open for the depositions of Dr. James and Charleston to be taken. *Id.* at 118, 681 S.E.2d at 41. It found Trane had exercised due diligence to obtain the depositions and the testimony was necessary to the case. *Id.* at 117–19, 681 S.E.2d at 41. The Court of Appeals vacated the remainder of the circuit court's order and remanded "all issues" to the Commission for reconsideration following the taking of the additional testimony. *Id.* at 119, 681 S.E.2d at 42. This Court has granted Trotter's petition for a writ of certiorari.

## II. STANDARD OF REVIEW

The Administrative Procedures Act (APA) establishes the standard for judicial review of workers' compensation decisions. *Pierre v. Seaside Farms, Inc.*, 386 S.C. 534, 689 S.E.2d 615 (2010); *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 276 S.E.2d 304 (1981). Under the APA, this Court can reverse or modify the decision of the Commission where the substantial rights of the appellant have been prejudiced because the decision is affected by an error of law or is clearly erroneous in view of the reliable, probative, and substantial evidence considering the record as a whole. *Transp. Ins. Co. v. South*

*Carolina Second Injury Fund,* 389 S.C. 422, 699 S.E.2d 687 (2010); *Pierre,* 386 S.C. at 540, 689 S.E.2d at 618.

## III. LAW/ANALYSIS

### A. Requests for Continuance & to Leave Record Open

On appeal, Trotter contends the Court of Appeals erred in finding the denial of Trane's requests for a continuance or to leave the record open to depose Pat Charleston and Dr. James constituted an abuse of discretion.

A commissioner has the authority to postpone a scheduled hearing in a workers' compensation matter for "good cause," which includes such reasons as illness and the need for additional discovery. S.C.Code Ann. Regs. 67–613(B) (Supp. 2010); *see also id.* 67–215(A)(5) (motions).

■ The granting or refusal of a request for a continuance rests in the sound discretion of the hearing commissioner, whose ruling will not be disturbed unless a clear abuse of discretion is shown. *Gurley v. Mills Mill,* 225 S.C. 46, 80 S.E.2d 745 (1954); *see also Williams v. Bordon's, Inc.,* 274 S.C. 275, 279, 262 S.E.2d 881, 883 (1980) ("It has long been the rule in this State that motions for a continuance are addressed to the sound discretion of the trial judge, and his ruling will not be upset unless it clearly appears that there was an abuse of discretion to the prejudice of appellant.").

■ For appellate purposes, an abuse of discretion occurs where the ruling is based on an error of law or, where the ruling is grounded upon factual findings, is without evidentiary support. *Sundown Operating Co. v. Intedge Indus., Inc.,* 383 S.C. 601, 681 S.E.2d 885 (2009); *Clark v. Cantrell,* 339 S.C. 369, 529 S.E.2d 528 (2000); *Bartlett v. Rachels,* 375 S.C. 348, 652 S.E.2d 432 (Ct.App.2007); *Burroughs v. Worsham,* 352 S.C. 382, 574 S.E.2d 215 (Ct.App.2002).

■ "Of necessity it must be left to the commission to determine whether or not a case shall proceed to trial or be continued." *Gurley,* 225 S.C. at 51–52, 80 S.E.2d at 747. Where a party is not prejudiced by the denial of a motion for a continuance, reversal is not required. *Wright v. Hiester Constr. Co.,* 389 S.C. 504, 698 S.E.2d 822 (Ct.App.2010).

### (1) Pat Charleston

■ As to Charleston, he was supposed to testify at the September 20th hearing, and his unavailability was sudden. He was hospitalized on the weekend before the hearing and had surgery the day of the hearing. The commissioner granted Trane's request to hold the record open for 14 days from the hearing date and, when Charleston was still incapacitated at the end of that time, the commissioner granted Trane's October 4, 2005 request for a two-week extension and agreed to hold the record open until October 20, 2005.[4] No deposition was ever scheduled, and the commissioner closed the record on October 20, 2005. Based on everything in the record, we find the commissioner did not commit a clear abuse of discretion in closing the record.

We agree with Trane that it was not "at fault" in failing to obtain Charleston's deposition, as Charleston was ill. However, the Court of Appeals specifically acknowledged that "the exact date on which Charleston would become available for a deposition was unknown[.]" *Trotter*, 384 S.C. at 117, 681 S.E.2d at 41. The only medical information submitted to the commissioner by Trane at that time came from Charleston's treating physician, who indicated Charleston was still hospitalized, that he was unable to participate in a deposition, and that his prognosis was "poor." Charleston was suffering from a life-threatening illness (cancer) with no certain recovery date. After a month, during which time no deposition was scheduled and no update had been received from Trane, the commissioner closed the record.

Although the Court of Appeals states Trane did not ask the commissioner to leave the record open "indefinitely," that is, in effect, what is being urged on appeal as there is no indication in the record that Charleston would have been available for a deposition at any time prior to the issuance of the commissioner's order in May 2006. Trane did maintain at the appeal before the circuit court that Charleston was then well enough to provide a deposition, but that was in 2007, well

---

4. Trane contends it was not notified of the second extension until the date the extension period expired. However, the question of notice was not addressed by the Court of Appeals and, thus, is not properly before this Court.

after the 2005 hearing in this matter and the issuance of the commissioner's order in 2006. To further delay the resolution of Trotter's claim due to the continuing illness of a witness, however unfortunate the circumstances, would not serve the interests of justice, and was a factor necessarily considered by the commissioner in making her decision to close the record.

■ Moreover, Trane has shown no prejudice on appeal. Charleston's email of February 28, 2005 to DeBoo was admitted into evidence. The e-mail set forth the essence of Charleston's expected testimony, i.e., that Trotter reported a back injury to him on Friday, February 4, 2005, but she did not report it as being work-related. Charleston further stated in his e-mail that Trotter went home on Friday, February 4th, and the next time she called, Trotter reported that she had undergone surgery and would be out of work for a few months. Thus, Charleston's account of events was in the record for consideration by the commissioner, and Trane has not shown any other material information that Charleston would have been able to contribute.[5] No error of law has been alleged or shown, and the commissioner's factual findings in this regard are fully supported by the record.

## (2) Dr. James

■ As for Dr. James, we agree with Trotter that the Court of Appeals mischaracterized the evidence when it stated Trane "sought to depose Dr. James prior to the hearing, but *due to scheduling difficulties,* the deposition was scheduled for a date after the hearing." *Trotter,* 384 S.C. at 118–19, 681 S.E.2d at 41 (emphasis added). Upon reviewing the record, we find there is evidentiary support for the commissioner's finding that Trane had the opportunity to depose Dr. James on the agreed-upon date of September 7, 2005; however, it chose to cancel the deposition for strategic reasons.

---

5. Trane need not have relied only upon Charleston regarding notice. For example, Trotter testified that she had called the personnel office and spoke to Mays about her work injury prior to her surgery, but we note Trane did not call Mays as a witness to refute this testimony. Additionally, Trotter and Trane note in their briefs that Charleston is now deceased. Thus, we find granting an order of remand for his testimony would serve no purpose.

On August 5, 2005, the Commission sent all parties a "Notice of Hearing" advising them that the hearing on Trotter's claim would be held on September 20, 2005. The parties initially scheduled the depositions of both Trotter and Dr. James for August 23, 2005, but when other, unrelated hearings arose for that date, the parties agreed to take both depositions on September 7, 2005. On August 11, 2005, Trane formally noticed the depositions of both Trotter and Dr. James for the agreed-upon date of September 7th. Both Trotter and Dr. James confirmed their availability.

Subsequently, on August 29, 2005, Trane told Trotter's counsel that it wanted to postpone Dr. James's deposition so it could have the transcript of Trotter's deposition in hand before deposing Dr. James. Trotter's counsel opposed the rescheduling, stating she did not believe this was a legitimate reason to postpone the proceedings. Counsel stated that Dr. James would be available on September 7th unless the Commission ordered otherwise.

Trane filed a motion for a continuance with the Commission on August 31, 2005. On September 1, 2005, before a ruling had been made on the motion, Trane sent Trotter's counsel a letter informing her that it was changing Dr. James's deposition date from September 7th to September 14th. Trane apparently contacted Dr. James's office directly and reset the date without consulting Trotter's counsel. Trotter's counsel again opposed the rescheduling, stating she already had three other depositions set for September 14th. Therefore, she planned to remain available for the deposition to proceed on September 7th as previously agreed.

On September 7th, Trane took Trotter's deposition as noticed. Dr. James was available, but Trane cancelled his deposition and chose not to depose him at that time. The commissioner thereafter denied Trane's motion for a continuance of the hearing, finding Trane had the opportunity to depose Dr. James, but had elected not to proceed on the agreed-upon date of September 7th for strategic reasons. Trane's motion to hold the record open for Dr. James's deposition to be taken on a date after the hearing was likewise denied.

We conclude the commissioner did not abuse her discretion in denying Trane's motions for a continuance or to hold the record open for the taking of Dr. James's deposition. Trane could have attempted to schedule the depositions sequentially in the beginning in order to achieve its goal of having the transcript of Trotter's deposition before deposing Dr. James. However, once all parties had consented to taking the depositions on September 7th and Trane had formally noticed the depositions for that date, its options became more limited. Contrary to Trane's assertion, it does not have an unfettered right to postpone the hearing simply to implement a better strategy for itself. Trane assumed the risk that its motion would be denied, which was not prudent since a continuance is not a matter of right, but of discretion. *See* 17 C.J.S. *Continuances* § 4 (2011) (observing continuances are not favored and "[a] party has no absolute right to a continuance as a matter of law" (footnote omitted)).

██ In addition, Trane has not demonstrated any prejudice. Dr. James's medical notes were submitted to the commissioner and considered as part of the record, and on appeal Trane has shown no material information that Dr. James would have provided that is not already included in the record. Dr. James's notes fully address his diagnosis and treatment of Trotter's medical condition, and he specifically conceded in his notes that he had no direct knowledge of the circumstances surrounding Trotter's injury. Consequently, we hold the commissioner did not abuse her discretion in denying the requests for a continuance or to hold the record open for the deposition of Dr. James to be taken.

██ Lastly, we discern nothing "inconsistent" in the commissioner's rulings to initially leave the record open for the deposition of Charleston to be taken, but not Dr. James, as found by the Court of Appeals. *Trotter*, 384 S.C. at 119 n. 2, 681 S.E.2d at 42 n. 2. Trane's request pertaining to Charleston was based on medical necessity and arose suddenly, and the request as to Dr. James was based on Trane's desire to obtain a strategic advantage. The circumstances were not similar and need not have been treated in the same manner by the commissioner.

■■■ A tribunal necessarily exercises wide discretion in managing a case, and decisions denying a request for a continuance are "rarely" overturned. *Morris v. State,* 371 S.C. 278, 283, 639 S.E.2d 53, 56 (2006) (citing *State v. Lytchfield,* 230 S.C. 405, 95 S.E.2d 857 (1957)); *M & M Group, Inc. v. Holmes,* 379 S.C. 468, 475, 666 S.E.2d 262, 265 (Ct.App. 2008). "Every reasonable presumption in favor of a proper exercise of the trial court's discretion will be made." 17 C.J.S. *Continuances* § 5 (2011). Based on the foregoing, we reverse the decision of the Court of Appeals and reinstate the order of the Commission, which had adopted the single commissioner's findings and conclusions in full.

## B.  Scrivener's Error Regarding Date of Accident

■■■ Trotter next contends the Court of Appeals repeated a scrivener's error made by the commissioner regarding the date of the accident and asks this Court to correct the error or to grant her leave to petition the Commission for correction of the date.

In her order, the commissioner stated in her "Findings of Fact" that (1) Trotter first experienced back pain in December 2004, (2) Trotter felt a "pop" in her back and had "excruciating pain" while "turbulating" at work on January 31, 2005, and (3) Trotter's injury occurred "in 2005." All of these findings are supported by the evidence.

Trotter points out, however, that in the "Conclusions of Law" portion of her order, the commissioner incorrectly states: "That on or about December 31, 2004 Mrs. Trotter felt a pop in her back while working." Trotter asserts the December 31, 2004 date is incorrect as all parties concede Trotter was not even working that day, so it is obviously a scrivener's error.

The Court of Appeals stated in its recitation of the facts that Trotter felt a "pop" in her back on January 31, 2005 while she was working. *Trotter,* 384 S.C. at 112, 681 S.E.2d at 38. It later quoted a passage from the commissioner's order that contained the December 31, 2004 date that Trotter contends is a scrivener's error. *Id.* at 115, 681 S.E.2d at 39–40.

■■■ In response, Trane contends the issue whether the December 31, 2004 reference is a scrivener's error is not

preserved as Trotter did not attempt to resolve this question at the Commission or in the circuit court. Trane further argues the Court of Appeals noted the inconsistencies in the dates in its opinion. Trane states Trotter cannot now argue that the inconsistency was merely a scrivener's error, and it "requests that this date, along with the date[s] of January 31, 2005 and February 4, 2005, [the date on the Form 50] remain in the record to be resolved on remand."

Contrary to Trane's assertion, the Court of Appeals did not discuss the discrepancies in the commissioner's order. Trotter did raise the issue in her petition for rehearing to the Court of Appeals, but rehearing was denied. In addition, we find Trotter's request is not barred by principles of error preservation. *Cf.* Rule 60(a), SCRCP (stating no explicit time limit for the correction of clerical errors).

Trane acknowledged during oral argument that the commissioner's order also contains a second reference to the December 31, 2004 date in the "Conclusions of Law," wherein she stated Trane's workers' compensation carrier "shall reimburse Mrs. Trotter's private insurance carrier for all causally related medical treatment incurred since the accident date of December 31, 2004." Because all parties concede that Trotter was not working on December 31, 2004 and since linking the date for reimbursing medical expenses to this 2004 date could cause confusion, we grant Trotter's request that this Court correct what are clearly scrivener's errors. We additionally direct the Commission to correct its records to change the December 31, 2004 references to January 31, 2005.

## IV. CONCLUSION

We conclude the Court of Appeals erred in finding the Commission abused its discretion in denying Trane's motions for a continuance or to keep the record open for the depositions of Charleston and Dr. James to be taken. Consequently, we reverse the opinion of the Court of Appeals and reinstate the order of the Commission.[6] However, we grant Trotter's

6. Based on our decision, we need not address Trotter's remaining issue, in which she argued the Court of Appeals erred in vacating the remainder of the circuit court's order and remanding all issues to the Commission.

request to correct the scrivener's errors regarding the date of Trotter's accident and additionally direct the Commission to correct its records to reflect this change.

**REVERSED.**

TOAL, C.J., PLEICONES, KITTREDGE, JJ., and Acting Justice JAMES E. MOORE, concur.