**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Verma Tedder, Employee, Claimant, Appellant,

v.

Darlington County Community Action Agency, Employer, and State Accident Fund, Carrier, Respondents.

Appellate Case No. 2016-001003

―――――――――――

Appeal From The Workers' Compensation Commission

―――――――――――

Unpublished Opinion No. 2018-UP-349
Heard June 7, 2018 – Filed August 1, 2018

―――――――――――

**AFFIRMED**

―――――――――――

Stephen J. Wukela, of Wukela Law Office, of Florence, for Appellant.

G. Murrell Smith, Jr., of Lee, Erter, Wilson, Holler & Smith, LLC, of Sumter, for Respondents.

―――――――――――

**PER CURIAM:**  Appellant Verma Tedder challenges a decision of the Appellate Panel of the South Carolina Workers' Compensation Commission (Appellate Panel) denying her claim for total and permanent disability benefits and future medical treatment.  Tedder argues the Appellate Panel erred in (1) declining to consider her vocational report; (2) finding that her functional capacity report was invalid; (3) ignoring her work restrictions and her physical therapist's records; and (4) awarding Respondents over a year of credit for temporary benefits paid to Tedder.  We affirm.

## I.        Vocational Report

Tedder argues the Appellate Panel should have considered her vocational report because Regulation 67-612 "requires the admission of an expert's report if it was provided to the moving party more than ten . . . days before the scheduled hearing."  In support of this argument, Tedder cites S.C. Code Ann. Regs. 67-612(B)(2) (2012), which states,

> A written expert's report *to be admitted as evidence at the hearing* must be provided to the opposing party as follows:
>
> . . .
>
> (2) The non-moving party must provide to the moving party any report not provided by the moving party at least ten days before the scheduled hearing.

(emphasis added).  This language establishes merely a prerequisite to the admission of an expert's report into evidence and does not take away the single commissioner's authority to exclude such a report for other reasons.  *See* S.C. Code Ann. § 1-23-330(1) (2005) ("Irrelevant, immaterial[,] or unduly repetitious evidence shall be excluded."); *cf. Michau v. Georgetown Cty. ex rel. S.C. Ctys. Workers Comp. Tr.*, 396 S.C. 589, 594, 723 S.E.2d 805, 807 (2012) (stating section 1-23-330(1) "establishes a minimum standard that applies generally, but not exclusively").

We acknowledge that Regulation 67-612 states, in pertinent part, that any "report submitted to the opposing party in accord with [S.C. Code Ann. Regs. 67-612(B)(1)] or [(B)(2)] . . . shall be submitted as an APA exhibit at the hearing unless withdrawn with the consent of the other party."  S.C. Code Ann. Regs. 67-612(D) (2012).  Further, "[g]reat liberality is to be exercised in allowing the introduction of evidence in workers' compensation proceedings."  *Trotter v. Trane Coil Facility*, 384 S.C. 109, 116, 681 S.E.2d 36, 40 (Ct. App. 2009), *rev'd on other grounds*, 393 S.C.

637, 714 S.E.2d 289 (2011). On the other hand, "[a]dministrative agencies are required to meet minimum standards of due process." *Smith v. S.C. Dep't of Mental Health*, 329 S.C. 485, 500, 494 S.E.2d 630, 638 (Ct. App. 1997) (citing S.C. Const. art. 1, § 3).

Tedder's refusal to submit to an evaluation by Respondents' vocational expert would have placed Respondents at an unfair disadvantage had the single commissioner or the Appellate Panel considered and given any weight to Tedder's vocational report, thus depriving Respondents of due process. *See id.* ("In cases where important decisions turn on questions of fact, due process at least requires an opportunity to present favorable witnesses."). Further, the single commissioner's and the Appellate Panel's refusal to consider Tedder's vocational report was fair to Tedder because she persisted in her refusal to submit to an evaluation by Respondents' expert even after the single commissioner warned her that if she chose not to submit to the evaluation, the single commissioner would not consider Tedder's own vocational report.

Based on the foregoing, we affirm the exclusion of Tedder's vocational report from consideration in determining permanent disability benefits.

## II.    Functional Capacity Report

Tedder asserts the Appellate Panel erred by adopting the single commissioner's finding that the conclusion in Tedder's functional capacity evaluation (FCE) report was invalid. Tedder argues that this finding constituted the single commissioner's own personal interpretation of test results, which this court condemned in *Burnette v. City of Greenville*, 401 S.C. 417, 428, 737 S.E.2d 200, 206 (Ct. App. 2012).

In *Burnette*, the single commissioner, who also conducted the initial hearing in the present case, found that an MRI "showed 'only a "minimal" protrusion with no nerve root displacement or impingement, and comparatively, no greater pathology of any significance (if any) than'" an MRI conducted four years previously. 401 S.C. at 428, 737 S.E.2d at 206. This court concluded the single commissioner's finding was unsupported by substantial evidence and was "[p]articularly disturbing." *Id.* The court stated, "Because no evidence indicates this opinion originated from a medical provider, yet it appears in the single commissioner's order, we are forced to conclude it is the medical opinion of the single commissioner, adopted by the Commission." *Id.*

Here, the FCE was performed by a non-treating physical therapist, Tracy Hill. After performing the FCE, Hill concluded that Tedder could "meet the demands of limited sedentary to limited light work" and listed several work restrictions. Hill also noted the limitations of the FCE itself. For example, Hill stated the results of the handgrip test indicated "submaximal effort" and "[t]readmill testing was attempted but not completed."

On the other hand, Hill noted that she conducted several tests to determine whether Tedder was magnifying or exaggerating her symptoms (identified as "the Waddell Signs") and the results on all of them were negative. The results of several other tests indicated that Tedder would perform part of the assigned task but would request termination of the test when she felt increased pain. However, she was able to complete the "Dynamic Reaching" test despite her complaint of increased left knee pain. Further, Hill noted the results of the Lumber Range of Motion testing were "AMA Valid."

In her order, the single commissioner addressed the FCE in the following manner:

> [Tedder] obtained her own FCE from Tracy Hill, the conclusion of which is not persuasive[] and which is in fact invalid: even Hill notes that (a) [Tedder's] handgrip testing did not result in a bell-shaped curve (which is particularly compelling since this is a knee and back case), indicating **sub-maximal effort**; and (b) [Tedder] repeatedly self-limited throughout/actually terminated testing . . . .

(single commissioner's emphasis). The Appellate Panel adopted this language in its order. Because there was no expert evidence supporting the finding that the FCE report's conclusion was invalid, this precise language was inappropriate. *Cf. Burnette*, 401 S.C. at 428, 737 S.E.2d at 206 (holding that this same commissioner's interpretation of an MRI, which was adopted by the Appellate Panel, was "unsupported by substantial evidence in the record" because "no evidence indicate[d] this opinion originated from a medical provider").

Nonetheless, as "the ultimate fact finder," the Appellate Panel is entitled to weigh the evidence as it sees fit. *See Shealy v. Aiken Cty.*, 341 S.C. 448, 455, 535 S.E.2d 438, 442 (2000) (holding the Appellate Panel "is the ultimate fact finder," and "[t]he final determination of witness credibility and the weight to be accorded

evidence is reserved to the [Appellate Panel]"); *id.* ("It is not the task of this [c]ourt to weigh the evidence as found by the [Appellate Panel]."). Aside from characterizing the FCE report's conclusion as invalid, the Appellate Panel found the report's conclusion unpersuasive, which was within their authority, and the panel members could have attributed little or no weight to the report in favor of the evidence generated by Tedder's treating physicians. *Cf. Burnette*, 401 S.C. at 427, 737 S.E.2d at 206 ("Although medical evidence 'is entitled to great respect,' the Commission is not bound by the opinions of medical experts and may disregard medical evidence in favor of other competent evidence in the record."). Therefore, the inappropriate characterization of the FCE report's conclusion as invalid is not reversible. *Judy v. Judy*, 384 S.C. 634, 646, 682 S.E.2d 836, 842 (Ct. App. 2009) ("Generally, appellate courts will not set aside judgments due to insubstantial errors not affecting the result.").

## III.   Work Restrictions

Tedder contends the Appellate Panel erred by ignoring her work restrictions and her physical therapist's records. Specifically, Tedder argues that (1) Dr. Elvington's imposition of work restrictions on September 12, 2013, "never changed," (2) the FCE report indicated Tedder was unable to walk at a normal pace, and (3) her records from Lowe's Physical Therapy referenced her "difficulty with left lower extremity range of motion, stability[,] and ambulation." Tedder complains that the Appellate Panel's inappropriate focus on her credibility caused the panel members to ignore all of this evidence.

As to the work restrictions imposed by Dr. Elvington, we will not assume he intended to attribute these restrictions to Tedder's left knee *only* by the time this knee reached maximum medical improvement (MMI). He conducted his initial post-operative examination of Tedder's left knee on September 12, 2013, and noted that she was scheduled for physical therapy at Lowe's two times a week for four weeks. He imposed work restrictions of no lifting or carrying over 10 pounds, no prolonged standing or walking, no climbing, stooping, or crawling. He imposed the same work restrictions at her October 24 visit, noting her left knee was "doing well," its range of motion was improving, and she would continue with her physical therapy twice a week for four more weeks. He also went over with her the MRI results for her *right* knee and noted a medial meniscus tear, recommending surgery.

During her December 5, 2013 visit, Dr. Elvington noted Tedder complained of diffuse left knee pain but she had a good range of motion and good strength. He also noted Tedder's right knee "continue[d] to be painful" and recommended "right

knee arthroscopy with partial medial meniscectomy" upon receiving workers' compensation approval.[1] Dr. Elvington instructed Tedder to continue with the same work restrictions. On August 26, 2014, Dr. Elvington prepared a brief addendum to his December 5 notes stating that Tedder's left knee had reached MMI but omitting any reference to work restrictions.

Respondents argue the work restrictions imposed at the December 5 visit were attributable to Tedder's right knee only. We agree—by December 5, Tedder's left knee had improved and Dr. Elvington was recommending surgery for her right knee. Therefore, to the extent Dr. Elvington's August 26 addendum to his December 5 notes could be interpreted as continuing the same work restrictions, those restrictions were reasonably attributable to Tedder's right knee problems.

As to certain findings in the FCE report, the Appellate Panel was free to discount their weight or even disregard them because there was other competent evidence of Tedder's abilities at MMI, namely, the records of Dr. Elvington and Dr. Edwards. *Cf. Burnette*, 401 S.C. at 427, 737 S.E.2d at 206 ("Although medical evidence 'is entitled to great respect,' the Commission is not bound by the opinions of medical experts and may disregard medical evidence in favor of other competent evidence in the record."); *Holcombe v. Dan River Mills*, 286 S.C. 223, 225, 333 S.E.2d 338, 340 (Ct. App. 1985) ("The Commission in workers' compensation cases sits as a jury does. It is elementary that a jury may believe part or all of a witness's testimony . . . ."). Further, the Appellate Panel "is the ultimate fact finder," and "[t]he final determination of witness credibility and the weight to be accorded evidence is reserved to the" Appellate Panel. *Shealy*, 341 S.C. at 455, 535 S.E.2d at 442.

As to the records from Lowe's Therapy, which Tedder argues referenced her "difficulty with left lower extremity range of motion, stability[,] and ambulation," these records correspond to visits occurring from May 13, 2013, through May 12, 2014, several months to over a year prior to her left knee reaching MMI on August 26, 2014. Thus, their probative value as to Tedder's abilities at MMI is limited. Further, in Lowe's June 20, 2014 discharge summary, Tedder's therapist, Antonio Franks, noted that Tedder "had [a] family emergency that prevented her from continuing therapy and [was] unable to" return to therapy before her therapy prescription would expire. Franks also noted, "Goals have not been met." While we are sympathetic to Tedder's family emergency, Franks' findings on her abilities at a

---

[1] At his subsequent deposition, however, Dr. Elvington admitted he could not say that the meniscus tear in Tedder's right knee was related to her March 29, 2013 fall.

point before she completed the prescribed amount of therapy have limited probative value as to the permanency of her impairment. Nonetheless, Dr. Elvington's August 26, 2014 impairment rating for Tedder's left knee explicitly took into account the range of motion documented by Franks in his June 20, 2014 discharge summary. Therefore, Dr. Elvington's impairment rating for Tedder's left knee, which the Appellate Panel found "compelling," incorporated the most pertinent information from Lowe's Therapy.

Based on the foregoing, the Appellate Panel did not ignore the records from Lowe's Therapy or misinterpret any work restrictions imposed by Dr. Elvington. Further, it was within the Appellate Panel's authority to discount or disregard any part of the FCE report. In sum, the Appellate Panel's findings were supported by substantial evidence and should be affirmed. *See Clemmons v. Lowe's Home Ctrs., Inc.-Harbison*, 420 S.C. 282, 287, 803 S.E.2d 268, 270 (2017) (holding that an administrative agency's findings are presumed correct but "may be set aside if they are unsupported by substantial evidence"); *id.* ("'Substantial evidence' is not a mere scintilla of evidence nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached or must have reached in order to justify its action." (quoting *Adams v. Texfi Indus.*, 341 S.C. 401, 404, 535 S.E.2d 124, 125 (2000)).

## IV.    Deductions from Compensation

Tedder maintains the Appellate Panel erred by awarding Respondents over a year of credit for temporary benefits paid to her because Respondents are barred from seeking this credit under the doctrines of laches and waiver. Specifically, Tedder argues Respondents waived their right to a stop-payment hearing and their right to receive credit for overpayments "by voluntarily seeking to continue the hearing on five . . . occasions over the course of a year, delaying the determination of permanency." Tedder continues, "[Respondents] cannot, in equity, claim reimbursement for the payments that resulted from that delay." We disagree.

"Laches is the neglect for an unreasonable and unexplained amount of time, under circumstances permitting diligence, to do what in law should have been done." *Mid-State Tr., II v. Wright*, 323 S.C. 303, 307, 474 S.E.2d 421, 423 (1996). Further, "[w]aiver is a voluntary and intentional abandonment or relinquishment of a known right." *Eason v. Eason*, 384 S.C. 473, 480, 682 S.E.2d 804, 807 (2009) (quoting *Parker v. Parker*, 313 S.C. 482, 487, 443 S.E.2d 388, 391 (1994)). "Stated

differently, waiver requires a party to have known of a right and known he was abandoning that right." *Id.*

Here, it is reasonable for Respondents to deduct the amount paid through the first rescheduled hearing date, May 5, 2015, to accommodate the Commission's mediation requirement for claims for permanent and total disability. Respondents assert that Tedder did not notify them before she filed her pre-hearing brief that she would claim entitlement to total permanent disability benefits, and Tedder does not dispute this assertion. Therefore, it was not Respondents' fault that the first hearing date had to be rescheduled to accommodate the mediation requirement. Moreover, Tedder chose to consent to five of Respondents' continuance requests made after an unsuccessful mediation.[2] Therefore, it is fair to allow Respondents credit for temporary total payments made during this time.

Under these circumstances, the delay in the hearing's occurrence may not be attributed to any neglect on the part of Respondents for an unreasonable or unexplained amount of time. *See Mid-State Tr., II*, 323 S.C. at 307, 474 S.E.2d at 423 (defining laches); *cf. Sanders v. MeadWestvaco Corp.*, 371 S.C. 284, 295, 638 S.E.2d 66, 72 (Ct. App. 2006) ("[T]he delay in having a timely hearing falls squarely on both parties. Thus, we find no substantial evidence supporting the Appellate Panel's decision to overpay benefits to [the claimant]."). Further, Respondents did not knowingly abandon their right to a stop-payment hearing or to credit for overpayments. *See Eason*, 384 S.C. at 480, 682 S.E.2d at 807 (defining waiver).

Tedder asserts it is the position of Respondents that she owes Carrier $4,103.71. Tedder also asserts that section 42-9-210 of the South Carolina Code provides only for deductions from the amount paid as compensation and "does not provide for direct reimbursement by the Claimant to the employer."[3] On the other hand, Respondents argue that Tedder "continued to draw Temporary Total Disability knowing full well that she could be ordered to repay any overpayments should the Panel rule against her."

---

[2] The August 20, 2015 hearing took place after Tedder refused to consent to Respondents' sixth continuance request.

[3] Section 42-9-210 states, in pertinent part, "Any payments made by an employer to an injured employee during the period of his disability, or to his dependents, which by the terms of this title were not due and payable when made may, subject to the approval of the commission, be deducted from the amount to be paid as compensation."

First, we question whether this precise argument is preserved as there is nothing in the record showing that Tedder raised it before the single commissioner or the Appellate Panel. *See Stone v. Roadway Express,* 367 S.C. 575, 582, 627 S.E.2d 695, 698 (2006) (holding that only those issues raised to the Workers' Compensation Commission "are cognizable on appeal"). Second, Tedder cites no authority for this argument, which consists of two conclusory sentences. Therefore, her argument is deemed abandoned. *See Ellie, Inc. v. Miccichi*, 358 S.C. 78, 99, 594 S.E.2d 485, 496 (Ct. App. 2004) (finding the appellants abandoned an issue on appeal by "fail[ing] to cite any supporting authority for [their] position" and providing "merely conclusory statements" for their arguments).

In any event, the lack of an express provision in section 42-9-210 for a claimant's reimbursement to an employer does not preclude the Appellate Panel from ordering a claimant to repay temporary total benefits should the amount of the overpayments exceed the amount the employer is ordered to pay to a claimant in permanent disability benefits. *See James v. Anne's Inc.*, 390 S.C. 188, 200–01, 701 S.E.2d 730, 736 (2010) ("Section 42–3–180 of the South Carolina Code confers a general grant of authority on the Commission to address all issues arising under the Workers' Compensation Act that are not otherwise provided for under South Carolina law."); *cf. id.* at 198–202, 701 S.E.2d at 735–37 (concluding there was nothing in the Workers' Compensation Act that prohibited, "either expressly or impliedly," language in an order allocating a lump sum award over a claimant's life expectancy, and thus, such language was within the Commission's authority).

Finally, there is nothing in the Appellate Panel's order expressly requiring Tedder to reimburse Carrier. Rather, the order allows Respondents to deduct their payments going back to September 8, 2014, from whatever they owe Tedder pursuant to her permanent partial disability awards.

Based on the foregoing, we affirm the Appellate Panel's ruling to allow Respondents credit for payments made from September 8, 2014, the date the Commission received the Form 21 request to stop temporary total payments.

**AFFIRMED.**

**HUFF, GEATHERS, and McDONALD, JJ., concur.**